**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-01655-PAB-NYW

The ESTATE OF JAMES ROEMER,

      Plaintiff,

v.

ALI SHOAGA, in his individual capacity,
DAVID JOHNSON, in his individual capacity,
NATHAN ALGIEN, in his individual capacity,
THOMAS BOYER, in his individual capacity, and
CHASE FELZEIN, in his individual capacity,

      Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE EXPERT**
**TESTIMONY BY PLAINTIFF'S EXPERT JEFFREY OPP**
**PURSUANT TO FED. R. CIV. P. 702**

---

Plaintiff, The Estate of James Roemer, by and through by and through its counsel, Jeremy A. Sitcoff, Elisabeth L. Owen, and Nelson A. Waneka of Levin Sitcoff PC, submits its Response to Defendants' Motion to Exclude Expert Testimony By Plaintiff's Expert Jeffrey Opp Pursuant to Fed. R. Civ. P. 702 (Doc. No. 151), and in support thereof, states as follows:

## I.      <u>INTRODUCTION</u>

Plaintiff is the estate of a man who was murdered in prison because Defendants, various prison officials, failed to protect him from a known predator toward other inmates. To establish the economic damages Plaintiff is owed for James Roemer's lost life, Plaintiff retained economist Jeffrey Opp, a qualified expert in the fields of lost earnings and lost household services, among

other subjects. Defendants move to exclude Mr. Opp's testimony on two grounds: First, they

contend that Mr. Opp's opinions regarding Mr. Roemer's lost earnings are premised on

assumptions that are not adequately supported. Second, they argue that Mr. Opp should not be able

to testify that the value of Mr. Roemer's life can be measured, in part, by the loss of household

services he himself suffered as a consequence of his death. As Mr. Opp's assumptions are well-

supported and his valuation of Mr. Roemer's lost household services is grounded in recognized

economic theory, Defendants' Motion should be denied. Defendants' arguments go exclusively to

evidentiary weight, rather than admissibility, and the Court should allow the jury to hear Mr. Opp's

testimony so that it, not the Court, can decide whether to award Plaintiff damages for Mr. Roemer's

lost earnings and lost household services.

## II.    ARGUMENT

### A.    Legal Standards

"[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of

damages is ordinarily determined according to principles derived from the common law of torts."

*Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986). Thus, appropriate damages in

a section 1983 action arising from a death "include medical and burial expenses, pain and suffering

before death, loss of earnings based upon the probable duration of the victim's life had not the

injury occurred, the victim's loss of consortium, and other damages recognized in common law

tort actions." *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1507 (10th Cir. 1990). A section

1983 plaintiff may proffer the testimony of an economist in support of his claims for damages.

"The threshold inquiry in any dispute over the admissibility of evidence," including the

testimony of an expert witness, "is whether that evidence is relevant." *C.A. Assocs. v. Dow*

*Chemical Co.*, 918 F.2d 1485, 1489 (10th Cir. 1990). Relevant evidence is generally admissible unless mandated otherwise. F.R.E. 402. If the evidence in question is relevant, it should be admitted by the Court unless its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. F.R.E. 403.

The opinion testimony of a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" is admissible where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles or methods
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702. Thus, once an expert witness is qualified, he may render an opinion within the field in which he is qualified. *103 Investors I, L.P. v. Square D. Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Then, the court must determine that any evidence proffered under rule 702 is not only relevant, but also reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *U.S. v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).

The Court has "considerable leeway" in determining the measure of reliability and whether an expert's proposed testimony meets that measure. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The Court's gatekeeping function is "a flexible and commonsense undertaking," the purpose of which is to ensure that an expert, relying on his considerable personal experience, "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Smith v. Ingersoll-Rand Co.,* 214 F.3d 1235, 1243 (10th Cir. 2000)

(citing *Kumho*, 526 U.S. at 141-42, 152). The rejection of expert testimony is the exception rather than the rule. *See* F.R.E. 702 advisory committee. notes. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

An expert's reliance on assumptions "does not render [his] testimony inadmissible." *Mueller v. Swift*, 2017 WL 3175798, at *2 (D. Colo. July 25, 2017). Criticisms of the basis for an expert's assumptions "may certainly be brought out on cross-examination and by competing evidence, including by [a d]efendant['s] anticipated competing expert testimony." *Id.* Specifically, an economic damages expert's testimony as to lost earnings is not rendered inadmissible "for failure to obtain and rely on independent opinions from a vocational expert." *Id.*

**B.      Mr. Opp's Factual Assumptions are Supported and His Opinion Testimony Regarding Mr. Roemer's Probable Lost Earnings is Admissible.**

Defendants argue that there is no evidence that Mr. Roemer previously worked as a caterer and motorcycle mechanic and, therefore, that Mr. Opp's opinions reflecting the value of Mr. Roemer's lost earnings should be excluded. (Doc. No. 151 at 8-12). Defendants' argument can be distilled down to the following: 1) That there is no evidence supporting Mr. Opp's assumption that Mr. Roemer was historically employed as either a caterer and motorcycle mechanic; and 2) That there is no evidence that Mr. Roemer would have actually been gainfully employed after his release from prison such that he would have actually earned amounts similar to those Mr. Opp calculated. *Id.* With respect to the first point, Plaintiff can and will present evidence at trial supporting Mr. Opp's assumptions that Mr. Roemer was previously employed in the catering profession and as a motorcycle mechanic. With respect to the second point, Mr. Opp's testimony is admissible irrespective of whether Plaintiff can demonstrate with certainty that Mr. Roemer would have been

consistently employed throughout his life after his release from prison. Both of Defendants' arguments go only to the weight of the evidence, a matter squarely and exclusively within the jury's purview, and their Motion to exclude Mr. Opp's testimony should be denied.

1.    **There Exists Adequate Evidence to Support Mr. Opp's Assumptions Regarding Mr. Roemer's Employment History**

Defendants contend that Mr. Opp's assumptions that Mr. Roemer worked, prior to his incarceration and death, as a caterer and motorcycle mechanic are unsupported and therefore unreliable and inadmissible. (Doc. No. 151 at 8-12). Mr. Roemer's ex-wife, mother of his child, and one of the personal representatives of his estate will testify at trial that Mr. Roemer did indeed work as a caterer and motorcycle mechanic. (**Exhibit 1** at ¶¶ 4-5.) Moreover, that testimony is supported by the Colorado Department of Corrections' ("CDOC") (represented in this matter by Defendants' counsel) own documentation. (**Exhibit 2** at 1.) Indeed, Mr. Roemer's Diagnostic Narrative Summary[1] lists Mr. Roemer's "last job" prior to his incarceration in CDOC as "motorcycle mechanic" from 2008-2011. (*Id.*) His "longest job" is identified as "catering/event planner" from 1995-2005. (*Id.*) Presuming the accuracy and integrity of CDOC's own records, Mr. Opp's assumption that Mr. Roemer had historically been employed as both a motorcycle mechanic and caterer is adequately supported. Defendants' request that Mr. Opp's testimony be excluded on the ground that Mr. Roemer did not actually work in those jobs should be denied.

2.    **Mr. Opp's Testimony Regarding Mr. Roemer's Probable Employment After His Death is Admissible**

Defendants' second argument against the reliability of Mr. Opp's testimony is that Plaintiff

---

[1] This is a document completed on a prisoner's intake to prison that gives an overview of various historical information and identifies certain carceral needs for that individual.

cannot demonstrate that Mr. Roemer indeed would have worked either as a motorcycle mechanic or caterer after his release from prison, particularly in light of his criminal history and statistics regarding the recidivism rates for previously incarcerated individuals. (Doc. No. 151 at 8-12). This argument goes to the weight, not the admissibility of Mr. Opp's testimony. "Analysis of lost future earnings is inherently subject to uncertainty, including the possibility that an employee might not continue his or her employment as long as desired, for a variety of reasons." *Mueller*, 2017 WL 3175798, at *4. Indeed, any individual may not be employed in the same way as he has historically for the remainder of his life. He may become injured, get laid off, or be called to live a life of poverty due to a religious revelation. On the other hand, he may be promoted, earn another degree, or marry rich, thereby increasing his future earnings. No one, including Mr. Opp, has a crystal ball, but if we are to assign an economic value to a person's economic production over the course of his lifetime, as litigants regularly and routinely do, there must be certain baselines established in order to do that. In light of Mr. Roemer's historical employment, Mr. Opp's baseline assumptions are reasonable and reliable and his opinions regarding Mr. Roemer's lost earnings should not be excluded.

Defendants' argument rests, in part, on the notion that because Mr. Roemer had a criminal history, Mr. Opp's assumptions that he would have become gainfully employed after being released from prison are inadmissibly unreliable. Defendants offer no evidence, though, that their prison system is so abjectly ineffective in a rehabilitative sense that it can be said with certainty that Mr. Roemer would never have worked again in his lifetime after his release. Indeed, the warden of the prison at which Mr. Roemer was killed has previously testified that "the guiding principle of the Colorado Department of Corrections" is and has always been rehabilitation, and

that "that goal has always been met." (*See* Deposition of James Falk dated Sept. 11, 2014, in *Young v. Raemisch*, Civil Action No. 13-cv-01744-RPM, attached as **Exhibit 3**, at 11:2-12:16). Mr. Falk specifically defines rehabilitation as "[p]roviding the offenders the opportunity to change behavior, and that ties into, like I say, our mission for them to become productive citizens when they get out and succeed." (*Id.* at 10:7-14.) Defendants' having cited no evidence that CDOC is decidedly not actually rehabilitating *any* prisoner, including Mr. Roemer, the Court should reject their argument that Mr. Opp's opinion that Mr. Roemer would have obtained the gainful employment that he would have needed in order to live in the world after his release from prison is so unreliable as to be inadmissible.

**C.      An Individual Plaintiff Can Recover Economic Damages for His Own Lost Household Services**

Defendants contend that the portion of Mr. Opp's opinion providing an economic damages calculation relating to the value of Mr. Roemer's lost household services should be excluded at trial. (Doc. No. 151 at 12-14). Defendants have not identified any reason that Plaintiff cannot prove at trial that he did indeed suffer a loss of household services by his death and their argument misunderstands the nature of the loss of household services calculation. There is evidence that Plaintiff performed household services before his death. Moreover, the value Mr. Opp attributed to Mr. Roemer's lost household services is not one that requires Plaintiff to demonstrate that, in the wake of his death, a third party would have had to provide household services him or herself or to make an expenditure in order to have those services performed. Rather, Mr. Opp's lost household services calculation reflects the fair value attributable to Mr. Roemer's economic productivity over the course of his lifetime and is, therefore, compensable.

Mr. Opp's calculation for Mr. Roemer's lost household services is a measure of "the services he would have performed had he lived." (Deposition of Jeffrey Opp dated August 10, 2016, attached as **Exhibit 4**, at 68:3-4.) That measurement is premised on the idea that, "if he had lived, [Mr. Roemer] would have had the wherewithal, and the ability to perform these services, and now he does not." (*Id.* at 68:11-13.) Mr. Roemer himself "would have received the benefit of those services." (*Id.* at 68:17-18.) For example, "if he had made himself a meal, he would have received the benefit of the preparation of that meal, personally." (*Id.* at 68:20-22.) Accordingly, Mr. Opp's calculation for lost household services reflects the "replacement cost for the value of these services, that Mr. Roemer would have performed absolutely on his own behalf . . . . [T]here is a value associated with those services." (*Id.* at 69:21-24.)

Mr. Opp's calculation of Mr. Roemer's lost household services is well-founded in economic theory. As Mr. Opp sets forth in his report, the calculation is premised on figures reported in *The Dollar Value of a Day*, an economic study that provides a calculation of the value of an individual's household services depending on gender, part-time versus full-time employment, the number of people in the home, the ages of individuals in the home, marital status, spousal employment, and disability. (*Id.* at 59:8-17.)[2] *The Dollar Value of a Day* calculation is

---

[2] *The Dollar Value of a Day* is commonly relied upon by economists when calculating the economic value of lost household services. *See* Thomas R. Ireland, Uses of the American Time Use Survey to Measure Household Services: What Works and Does Not Work, 8 J. Legal Econ. 61 (Oct.2011). Federal district courts in other jurisdictions have admitted expert testimony based on *The Dollar Value of a Day*. *See, e.g.*, *Ramirez v. Chip Masters, Inc.*, No. 11-CV-5772 (WFR) (MDG), 2014 WL 1248043, at *10 (E.D.N.Y. Mar. 25, 2014) (concluding that expert's valuation of "household service are well supported by empirical evidence and not contested" when he relied on " 'The Dollar Value of a Day, Time Diary Analysis' "); *Ashford v. Wal-Mart Stores, LP*, No. 1:11-CV-57 (HSO) (JMR), 2013 WL 152853, at *5 (S.D. Miss. Jan. 15, 2013) (noting that The Dollar Value of a Day study "appears to be commonly relied upon by economists when calculating the economic value of lost household services" and rejecting defendant's motion *in limine* based

further broken down into annual household production and annual helping and caring figures. (*Id.* at 56:20-58:21; *see also* Docket No. 151-1 (Report of Jeffrey Opp) at 8.)   Annual household production values reflect the decedent's "doing stuff around the house that has value: [d]oing the laundry, doing the dishes, doing . . . sundry items, maintaining the home, shopping – and the not fun shopping, but the actual shopping, that is necessary in order to maintain the home." (**Exhibit 4** at 58:2-10.) The value of annual caring and helping "is helping other folks," "time[] that the individual spends helping others, either in the home or outside the home, or caring for others either in the home or outside the home." (*Id.* at 48:12-16.) The persons helped, for purposes of the annual caring and helping calculation, could be children, a spouse, a neighbor, or even a relative who lives somewhere else. (*Id*. at 19-21.)

Referencing the values set forth in *The Dollar Value of a Day*, "about the lowest value of household services" that can be calculated is for single working males like Mr. Roemer. (*Id.* at 72:16-17.) In this particular case, Mr. Opp has provided a reasonable and low value for Mr. Roemer's lost household services. Because Mr. Roemer was a single male, presumed to be working, as discussed above, Mr. Opp's calculations reflect only "de minimis" values for annual caring and helping. (*Id.* at 59:21-22.) Similarly, his calculations for annual household production were on the low end of the spectrum. (*Id.* at 72:16-17.)

---

on the expert's use of "estimates from tables contained in The Dollar Value of a Day, instead of basing his calculations on the specific amount of time that [plaintiff] engaged in particular household tasks" because this criticism went to "weight" not "admissibility").

Defendants first argue that Mr. Opp's opinion that Mr. Roemer lost $300,394.00[3] in household services should be excluded because the calculations "were made without Mr. Opp's review of any facts or evidence demonstrating that he actually performed the household services." (Doc. No. 151 at 13.) Defendants rely on a 1988 decision from the Fifth Circuit for the proposition that a plaintiff must demonstrate actual past performance of household services in order to recover damages for lost household services. (*Id. citing Hernandez v. M/V Rajaan*, 841 F.2d 582, 589 (5th Cir. 1988), *opinion corrected on denial of reh'g*, 848 F.2d 498 (5th Cir. 1988)). Initially, *Hernandez* relates to a damages award entered after trial, not the admissibility of expert testimony pursuant to F.R.E. 702. Accordingly, the case is inapposite to Defendants' Motion. It is an entirely different matter to assert that an expert's testimony was not adequately supported by evidence introduced at trial, as the defendants in the *Hernandez* case did, then it is to contend that an economic damages expert's testimony is so unreliable so as to be inadmissible in its entirety, as Defendants do here.

Moreover, Defendants will not be able to demonstrate at trial, as the defendants in *Hernandez* apparently did, that Mr. Roemer never performed any household services prior to his death. To the contrary, Ms. Cannon will testify that Mr. Roemer performed housework and yard work, cared for horses, did laundry, cooked, did home and personal car maintenance, and provided child care before his death and incarceration. (**Exhibit 1** at ¶¶ 6-7.) Moreover, Mr. Roemer checked on veterans in the small town where he and Ms. Cannon lived and assisted them in various ways. (*Id*. at ¶ 7.) Similarly, Mr. Roemer volunteered for the Girl Scouts, promoted a friend's band, and

---

[3] Defendants reference a value of $299,394.00. Plaintiff is unaware of the basis for this number. Mr. Opp's report clearly identifies the value of Mr. Roemer's historical and future lost household services as $300,394.00. (Docket No. 151-1 at 1 and 8.)

an event for the Special Olympics. (*Id* at ¶ 7.) Accordingly, the premise for the Fifth Circuit's decision to vacate the plaintiff's award for lost household services in *Hernandez* does not exist here.

Defendants' second argument against permitting Mr. Opp to testify to Plaintiff's damages for Mr. Roemer's lost household services is essentially that lost household services damages are only recoverable in the third party context, where a survivor claims economic loss related to the death of a family member or spouse. (Doc. No. 151 at 13-14.) Without authority, Defendants contend that lost household services damages are unavailable in section 1983 actions. (*Id.*). Because economic damages reflecting benefits that would have inured directly to the decedent are recoverable in section 1983 actions, Plaintiff here can recover economic damages for Mr. Roemer's lost household services. *See Berry*, 900 F.2d at 1507.

Defendants argue that "[i]t makes little sense to award the estate of a decedent monetary damages for the value of the work he or she would have performed to maintain themselves (which is not a benefit conferred on them by a third party) or which the decedent would have had to have made an *expenditure* to have performed by a third party." (Doc. No. 151 at 14, emphasis in original). Defendants misunderstand the nature of the lost household services calculation. The calculation is reflective of the value of an individual's economic production over the course of his lifetime and represents recoverable economic damages just like lost earnings.

As Mr. Opp explained in his deposition, the value of lost household services is reflective of the replacement cost of the benefit an individual confers on the members of his household, whether that household includes only himself or multiple others. (**Exhibit 4** at 69:21-24.) The lost household services calculation is a value assigned to a benefit. It does not reflect the actual dollar

amount of a transaction between two parties, as Defendants appear to conceive of it. (Doc. No. 151 at 13 (agreeing with the proposition that a "surviving claimant" may recover damages for a lost benefit conferred by a third person because he "must either go without the services performed by the decedent or pay third parties to perform the same services") and 13-14 (referring to "work [the decedent] would have performed to maintain themselves . . . or which the decedent would have had to have made an *expenditure* to have performed by a third party) (emphasis in original)). Rather, the lost household services calculation reflects one measure of the numerical value of a person's life.

Damages for lost household services are recoverable just as damages for lost earnings are. *See Fuller v. Finley Resources, Inc.*, 2016 WL 3854043, at *2 (D.N.M. Apr. 6, 2016) (permitting expert testimony regarding an individual's own lost household services damages).[4] A dead person does not need a job as he no longer needs to support himself, yet the law obviously permits his estate to recover lost future wages because that is a way to measure the value of his lifetime economic production. Similarly, though a dead person no longer has a household to maintain, his estate is still entitled to recover damages for the benefit he would have conferred on himself related to maintaining his household because that dollar amount is reflective, in part, of the economic value of his life. There is, accordingly, no difference between this section 1983 action brought by Mr. Roemer's estate and a wrongful death action in terms of the availability of loss of household services damages. Defendants' Motion should be denied.

---

[4] The court in *Fuller* appears to conceive of lost household services damages as hedonic damages. 2016 WL3854043, at *2. Plaintiff disagrees with that characterization, though not important to the particular question at issue in Defendants' Motion. *See Rowland v. U.S.*, 2015WL4943955, at *2 (D. Colo. Aug. 20, 2015) (describing lost household services damages as economic).

### III.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendants' Motion to Exclude Expert Testimony by Plaintiff's Expert Jeffrey Opp Pursuant to Fed. R. Civ. P. 702, and grant such other and further relief as the Court may deem just and proper.

DATED this 1st day of September 2017.

Respectfully submitted,

**LEVIN SITCOFF PC**

*s/ Elisabeth L. Owen*
Jeremy A. Sitcoff
Elisabeth L. Owen
Nelson A. Waneka
1512 Larimer Street, Suite 650
Denver, CO 80202
T: (303) 575-9390
jas@levinsitcoff.com
elo@levinsitcoff.com
naw@levinsitcoff.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Nicole S. Geller, nicole.gellar@coag.gov
- Jennifer S. Huss, jennifer.huss@coag.gov

*Attorneys for Defendants*

s/ *Nicole R. Peterson*
Nicole R. Peterson