IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01655-PAB-NYW

THE ESTATE OF JAMES ROEMER,

      Plaintiff,

v.

ALI SHOAGA, in his individual capacity,
DAVID JOHNSON, in his individual capacity,
NATHAN ALGIEN, in his individual capacity,
THOMAS BOYER, in his individual capacity, and
CHASE FELZEIN, in his individual capacity,

      Defendants.

---

**ORDER**

---

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [Docket No. 109] and Defendant's Motion for Summary Judgment [Docket No. 110] filed by defendant Ali Shoaga.[1]  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.  BACKGROUND**

This case arises from the June 13, 2012 murder of James Roemer by his cellmate, Paul Farley.

---

[1] The initial complaint misspelled Mr. Shoaga's name as "Showaga."  Docket No. 1.

## A.  Background[2]

### 1.  Factual Background

Mr. Farley has an extensive history of violence and threats against other inmates.  Mr. Farley was incarcerated by the Arizona Department of Corrections ("ADC") beginning on August 6, 1997.  Docket No. 110-4 at 2.  In July 2011, Mr. Farley was transferred to the Colorado Department of Corrections ("CDOC") to serve a lengthy sentence for a robbery he committed in Pueblo, Colorado.  Docket No. 110 at 1, ¶ 1 (citing Docket No. 110-1).  On June 23, 2011, before Mr. Farley was transferred to Colorado, Herb Haley of the ADC wrote a letter ("Haley letter")[3] summarizing Mr. Farley's history and "current management concerns."  Docket No. 110-4 at 2.  The ADC provided materials about Mr. Farley to the CDOC, which the CDOC used to assess Mr. Farley for placement in its various facilities.  *See* Docket No. 109-3.  The Haley letter was included in these materials.  Plaintiff's Statement of Undisputed Material Facts ("PSUMF") 23; Docket No. 109-9 at 12, 71:4-72:19.

The Haley letter indicated that Mr. Farley was incarcerated in the ADC for armed robbery, aggravated assault, manslaughter, and theft by extortion.  Docket No. 110-4 at 2.  The letter also stated that "Inmate Farley has an extensive disciplinary history, most notable for: causing death/great bodily harm, sexual assault, weapons possession/ manufacture, assaults, fighting, and throwing on staff and other inmates."  *Id*. at 3.  The letter also listed the following security and safety concerns regarding Mr. Farley:  While

---

[2] The following facts are undisputed by the parties unless otherwise indicated.

[3] The Haley letter is also attached to the amended complaint.  Docket No. 141-1. Its authenticity is not contested by Mr. Shoaga.  *See* Docket No. 116 at 2, ¶ 3.

being transported to the ADC from Kansas, Mr. Farley escaped using force. *Id.* at 3. In 1999, Mr. Farley was disciplined for sexually assaulting his cellmate with a lethal weapon. *Id.* In 2000, Mr. Farley sliced open his cellmate's back with a razorblade. Docket No. 110 at 2-3, ¶ 6(e) (citing Docket No. 110-4 at 26-43). In 2001, while in administrative segregation, Mr. Farley assisted the inmate in an adjoining cell to commit suicide by strangling him with a bed sheet, resulting in a manslaughter conviction. Docket No. 110-4 at 3.

The Haley letter states that Mr. Farley was targeted by the Aryan Brotherhood, a prison gang, and was either a victim or predator in relation to 25 other inmates. Docket No. 110-4 at 3. The letter also recounts various threats and other statements made by Mr. Farley, including "documented statements to investigators that he 'had tried to enter protective segregation ["PS"] for the purposes of killing a PS inmate,' . . . 'I want to put steel in someone,' and 'it would be easier to find a victim in PS.'" *Id.*[4] The letter rejected explaining these statements away as "'bravado' to ensure a single cell setting" because "the violence this inmate has demonstrated in the past has clearly established a threat towards other inmates." *Id.*

### 2. *Mr. Farley's Transfer to Colorado*

At the CDOC's intake facility, the Denver Reception and Diagnostic Center ("DRDC"), a CDOC case manager completed a Notice for Administrative Segregation

---

[4] Notwithstanding these statements about wanting to use protective segregation to kill someone, the letter states that he was granted voluntary protective segregation on April 20, 2009. Docket No. 110-4 at 2. Shortly thereafter, on April 28, 2009, "it was the decision of the department to override Inmate Farley's classification to maximum custody due to his predatory behavior, and . . . that he should remain in maximum custody while in the ADC." *Id.* at 4.

Hearing to set a hearing to determine if Mr. Farley would be placed in administrative segregation. Docket No. 109 at 4, ¶ 11 (citing Docket No. 109-5); Docket No. 116 at 2-3, ¶ 11. The notice recited some of Mr. Farley's past disciplinary history and stated, "Offender Farley's excessive violation of policy, procedures, and disregard for authority poses a threat to the safety and security of the facility, staff, and other offenders." Docket No. 109-5.

Defendant Ali Shoaga was the chairperson of the three person administrative segregation hearing committee and, as chairperson, he was responsible for making the recommendation as to whether Mr. Farley should be placed in administrative segregation. Docket No. 110 at 2, ¶ 4. On September 1, 2012, Mr. Shoaga recommended Mr. Farley not be placed in administrative segregation, stating:

> At his hearing, offender Farley admitted that he was guilty of the infractions committed while in Arizona. The available information indicates that all of offender Farley's disciplinary infractions happened nearly a decade ago. The information available also seems to indicate that some of the reason for his confinement in Segregation while in Arizona was due to custody issues. There is no documented evidence of disciplinary infractions within the last ten years.

Docket No. 110-2.

At his deposition, Mr. Shoaga testified that he had reviewed the materials from the ADC, including the Haley letter, before the administrative segregation hearing. Docket No. 109 at 6, ¶ 23 (citing 109-9 at 12, 71:21-72:19). He also testified that he was aware that Mr. Farley posed more than a low risk,[5] but he thought that the CDOC's classification system and treatment programs would "mitigate the level of risk." Docket

---

[5] It is unclear what "risk" Mr. Shoaga was referring to. *See* Docket No. 109-9 at 5, 33:8-34:25.

No. 109-9 at 5, 34:14-17 and at 6, 40:19-25.  Defendant David Johnson, the associate warden at DRDC, affirmed the recommendation.  PSUMF 34; Docket No. 141 at 11, ¶ 51-53.

### 3.  Murder of Mr. Roemer

On September 22, 2011, Mr. Farley was transferred to the Sterling Correctional Facility ("SCF") in Sterling, Colorado.  Defendant's Statement of Undisputed Material Facts ("DSUMF") 45.  Because he was placed in the general population at SCF, Mr. Farley was required to have a cellmate.  PSUMF 40.  After approximately nine months, Mr. Farley was reassigned to a cell with Mr. Roemer.  PSUMF 41; DSUMF 45.

In response to a discovery request, plaintiff stated that "Mr. Roemer's relationship with Mr. Farley prior to his murder was permeated with fear and malcontent."  Docket No. 110-11 at 10, Resp. to Interrogatory 21.  On May 25, 2012, Mr. Roemer met with his mental health provider, Michelle Long, and expressed concerns about his safety, describing Mr. Farley as a "murderer."  Docket No. 110-11 at 4, Resp. to Interrogatory No. 7.

Approximately two weeks before the murder, Mr. Farley became "extremely agitated with Mr. Roemer and . . . pinned [Mr. Roemer] against the wall of their cell and told him, 'Don't you know what I could do to you?'"  Docket No. 110-11 at 10, Resp. to Interrogatory 21.  "After that point, Mr. Roemer was extremely fearful of Mr. Farley and wanted not to be housed in a cell with him."  *Id*.

Approximately ten days before the murder, Mr. Roemer told Officer Thomas Boyer that he "could not live with Mr. Farley due to safety concerns" and requested to move to a different cell to get away from Mr. Farley.  Docket No. 110-11 at 4, Resp. to

Interrogatory No. 7.  Officer Boyer immediately denied the request.  Docket No. 141 at 18, ¶ 84.  The request was allegedly denied because the two had asked to live together.  *Id.*

On June 13, 2012, Mr. Farley strangled Mr. Roemer to death in their cell. PSUMF 2; DSUMF 46.

### B.  Procedural History

Plaintiff, the estate of Mr. Roemer, filed this case on June 12, 2014.  Docket No. 1.  Plaintiff asserts a 42 U.S.C. § 1983 claim for violation of the Eighth Amendment by deliberate indifference to a substantial risk of serious harm.  Docket No. 141 at 20.

On September 29, 2015, the Court granted in part a motion to dismiss, dismissing all defendants except Mr. Shoaga.  Docket No. 58 at 34-35.  On July 21, 2016, plaintiff moved to amend the complaint to add additional defendants.  On September 9, 2016, plaintiff and Mr. Shoaga filed motions for summary judgment. Docket Nos. 109, 110.  On March 30, 2017, the Court granted plaintiff's motion to amend in part, allowing the addition of four defendants.  Docket No. 140.  Plaintiff filed its amended complaint on April 7, 2016.  Docket No. 141.  The amended complaint does not alter the claims against Mr. Shoaga.  *See id*.

## II.  ANALYSIS

The cross motions each seek summary judgment on plaintiff's deliberate indifference claim against Mr. Shoaga.  Docket Nos. 109, 110.  In addition to claiming that he is entitled to judgment as a matter of law based on the undisputed evidence, Mr. Shoaga argues that he is entitled to summary judgment on statute of limitations and

qualified immunity grounds.  Docket No. 110.

## A.  Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*.  Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, when "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).  The

nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

### B. Mr. Shoaga's Motion for Summary Judgment

Plaintiff's civil rights claim under 42 U.S.C. § 1983 is subject to a two-year statute of limitations. *Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993) (citing Colo. Rev. Stat. § 13-80-102(1)(i)). "The determination of when a § 1983 action accrues is controlled by federal rather than state law." *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1147 (D. Colo. 2010) (citing *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000)). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). When the alleged injury is the violation of a constitutional right, the Court must locate the violation in time to determine when the claim accrued. *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998).

Mr. Shoaga argues that Mr. Roemer knew or should have known that his Eighth

Amendment rights had been violated when Mr. Farley threatened Mr. Roemer and when Mr. Roemer expressed concerns about his safety to various people before his murder. Docket No. 110 at 10-12. These conversations allegedly occurred on May 25, 2012 with his mental health provider, Michelle Long, and at least ten days before his murder with Officer Boyer. *Id*. at 10, ¶¶ 48-49.

Plaintiff responds that the compensable injury did not occur until Mr. Roemer was murdered and, therefore, his claim could not have accrued earlier because, before the murder, Mr. Roemer would only have been able to sue for injunctive relief. Docket No. 118 at 11-12. Second, plaintiff argues that summary judgment cannot be granted based on the alleged conversations because Mr. Shoaga disputes that they occurred. *Id*. at 12 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250-51 (1986)). Third, plaintiff argues that, under the continuing violation theory, the accrual date is not based on the first incident. *Id*. at 13. Finally, plaintiff argues that Mr. Roemer and his estate are distinct and that "the Estate of Mr. Roemer did not learn of [his] fear until after Mr. Farley murdered Mr. Roemer." *Id*. at 14.

Mr. Shoaga replies that, under Colorado's survival statute, the estate's claims accrue at the same time they would have accrued to the deceased had he survived. Docket No. 122 at 2 (citing Colo. Rev. Stat. § 13-20-101(2)). Mr. Shoaga further argues that the distinction between monetary and equitable remedies is irrelevant because Mr. Roemer did not have to wait until he was physically harmed to bring an Eighth Amendment claim. *Id*. at 4 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996)).

### *1. Survival of Claims Held by the Estate*

"The general rule is that a § 1983 claim survives a plaintiff's death if that would be the result under applicable state law." *Cossio v. City & Cty. of Denver, Colo.*, 986 F. Supp. 1340, 1344 (D. Colo. 1997) (citing *Sager v. City of Woodland Park*, 543 F. Supp. 282, 287 (D. Colo. 1982)); *see also* 42 U.S.C. 1988(a). Two types of action can be brought after the plaintiff's death: (1) survival actions and (2) wrongful death actions. *Sager*, 543 F. Supp. at 288. "Survival statutes simply allow the cause of action to survive regardless of the death of a party." *Id*. Accordingly, a § 1983 survival action brought after the plaintiff's death "is essentially the assertion of the cause of action that the deceased would have had had he lived, requesting damages for violation of the decedent's rights." *Id*. By contrast, a wrongful death claim is "for the benefit of certain designated persons in order to compensate them for their personal losses resulting from the decedent's death, against the persons who wrongfully caused the decedent's death." *Id*. (citations omitted). The action asserted here is a § 1983 survival action for failure to protect Mr. Roemer from a substantial risk of serious harm in violation of the Eighth Amendment, alleging that Mr. Shoaga "disregarded the objective risk that Mr. Farley would cause substantial harm, including death, to another inmate." Docket No. 141 at 20, ¶ 97. Plaintiff does not bring a wrongful death claim under Colo. Rev. Stat. § 13-21-202. *See* Docket No. 141 at 20-23; *Cossio*, 986 F. Supp. at 1349 (wrongful death claims alleging harms to individuals other than the decedent).

Because the claim that plaintiff brings is a § 1983 survival claim, it is the same claim that could have been brought by Mr. Roemer, had he survived. "[T]he

decedent's estate, by necessity, stands in the decedent's shoes in a state survival action." *Espinoza v. O'Dell*, 633 P.2d 455, 466 (Colo. 1981) (citing *Publix Cab Co. v. Colorado National Bank*, 338 P.2d 702 (Colo. 1959)). Thus, plaintiff's claim did not, as plaintiff argues, accrue separately at the time the estate became aware of the relevant facts. *See* Docket No. 118 at 14. Rather, plaintiff's claim accrued when Mr. Roemer's claim accrued and is "brought in spite of the injured party's death" on the basis of an "action already accrued" by Mr. Roemer. *Espinoza*, 633 P.2d at 466 (internal quotation marks omitted).

### 2. Accrual of Mr. Roemer's Claim

"Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quoting *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994)) (internal citation omitted). Thus, to determine when the claim accrued, the Court must determine when Mr. Roemer knew or should have known that his constitutional rights had been violated.

Plaintiff's claim is predicated on a violation of his Eighth Amendment rights due to Mr. Shoaga's deliberate indifference to the risk of serious harm from Mr. Farley. The Court first addresses when plaintiff was aware of the elements of his claim and then addresses whether relief was available at that point.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828

(1994); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("The Eighth Amendment,

as we have said, requires that inmates be furnished with the basic human needs, one

of which is 'reasonable safety.'" (citing *DeShaney v. Winnebago County Dep't of Social

Servs.*, 489 U.S. 189, 199 (1989))).   "The analysis [of an Eighth Amendment claim]

should not be based on 'a court's idea of how best to operate a detention facility,'" but

should reflect "the evolving standards of decency that mark the progress of a maturing

society," which the Tenth Circuit has characterized as a "lofty standard."  *DeSpain v.

Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S.

337, 351 (1981)).  To prevail on his claim that Mr. Shoaga violated the Eighth

Amendment, plaintiff must show that (1) objectively, the harm he complains of is

sufficiently "serious" to merit constitutional protection and (2) Mr. Shoaga was

subjectively aware of a substantial risk to plaintiff's health or safety and acted in

purposeful disregard of that risk.  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir.

2009).

As to the objective element, a plaintiff must establish that "he [was] incarcerated

under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834,

which requires "more than ordinary lack of due care for the prisoner's interests or

safety."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *compare Benshoof v. Layton*, 351

F. App'x 274, 277 (10th Cir. 2009) (unpublished) (finding objective element satisfied

where plaintiff was forced to remain in cell with stinging fire ants for six days), *with

Montez v. Lampert*, 595 F. App'x 789, 792 (10th Cir. 2014) (unpublished) ("[A] 15-year-

old hernia operation would neither present symptoms readily ascertainable to a lay

person, nor make it obvious to a lay person that a bottom-bunk assignment was necessary.  Montez thus fails the objective prong of the *Farmer* test.").

As to the subjective element, the Eighth Amendment does not reach a prison official's conduct unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *see also Verdecia v. Adams*, 327 F.3d 1171, 1175-76 (10th Cir. 2003) ("Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." (internal citations omitted)).  A prisoner must therefore establish "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Martinez*, 563 F.3d at 1089 (quotations omitted).  An action or inaction unaccompanied by a subjective awareness of an unreasonable risk of harm does not constitute "punishment" within the meaning of the Eighth Amendment.  *Farmer*, 511 U.S. at 837-38.  A court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."  *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also Farmer*, 511 U.S. at 842 (noting that state of mind can be established with circumstantial evidence and "from the very fact that the risk was obvious").  The negligent conduct of a prison official is, in all cases, insufficient to rise to the level of deliberate indifference.  *Farmer*, 511 U.S. at 835 ("Eighth

Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety" (quotations omitted)).

Eighth Amendment failure to protect cases tend to hinge on precisely what risk is alleged to have led to a prisoner's injuries. *See, e.g.*, *Iwanski v. Ray*, 44 F. App'x 370, 373 (10th Cir. 2002) (unpublished) (distinguishing between risk that a specific inmate would harm plaintiff and threat that the specific inmate posed to all other inmates at facility due to combination of inmate's violent background, availability of object that could be used as weapon, and lax security at the facility). When a plaintiff alleges that his injuries resulted from a more specific risk, such as the risk of housing an inmate with particular cellmates, he must show that defendants knew that the plaintiff's placement in the cell with those cellmates created a serious risk to plaintiff's safety. *See, e.g.*, *Szymanski v. Benton*, 289 F. App'x 315, 319 (10th Cir. 2008) (unpublished) ("Mr. Szymanski never claimed to be the victim of pervasive inmate violence. Rather, his complaint is based on the alleged failure of detention-center personnel to protect him from Mr. Wallace."); *Verdecia*, 327 F.3d at 1175. The question before the Court, therefore, is when Mr. Roemer knew or should have known that prison officials were aware that Mr. Farley's placement in his cell posed a serious risk to Mr. Roemer's safety and that those officials disregarded that risk.

The incidents preceding the murder and Mr. Roemer's statements about Mr. Farley show that Mr. Roemer was aware that Mr. Farley posed an objectively serious risk to his safety. By March 25, 2012, Mr. Roemer believed that Mr. Farley was a murderer and expressed concerns about his safety. Docket No. 110-11 at 4, Resp. to Interrogatory No. 7. Shortly thereafter, Mr. Farley aggressively pinned Mr. Roemer

against the wall of his cell and asked, "Don't you know what I could do to you?"  Docket No. 110-11 at 10, Resp. to Interrogatory 21.  As plaintiff admits, "[a]fter that point, Mr. Roemer was extremely fearful of Mr. Farley and wanted not to be housed in a cell with him."  *Id*.  Ten days before his murder, Mr. Roemer told Officer Boyer that he "could not live with Mr. Farley due to safety concerns" and requested to move to a different cell to get away from Mr. Farley.  Docket No. 110-11 at 4, Resp. to Interrogatory No. 7.  This series of events shows that Mr. Roemer knew that Mr. Farley posed an objectively serious risk to Mr. Roemer's safety, at least from the point Mr. Farley threatened Mr. Roemer in their shared cell.  Mr. Roemer also knew or had reason to know that prison officials disregarded the risk to his safety because Officer Boyer immediately denied Mr. Roemer's request to be moved out of the cell Mr. Farley was in.  Thus, Mr. Roemer knew or should have known the facts that formed the basis of the cause of action.  *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) ("A civil rights action accrues when 'facts that would support a cause of action are or should be apparent.'" (quoting *Blumberg v. HCA Management Co.*, 848 F.2d 642, 645 (5th Cir. 1988)).  "[A] plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations."  *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004) (citing *Baker*, 991 F.2d at 632).  In particular, the Tenth Circuit has rejected the proposition that a claim does not accrue "until a plaintiff has detailed knowledge of the level of culpability of each of the actors involved."  *Id*.  Rather, Mr. Roemer needed only to know of his injuries, i.e., the prison officials' indifference to the risk to him, and "general cause of those injuries . . . [t]o start the running of the statute of limitations."

*Id*.  By the time that Mr. Roemer made Officer Boyer aware of his safety concerns and requested to move out of the cell, which request Officer Boyer immediately denied two weeks before the murder, Docket No. 141 at 18, ¶ 84, Mr. Roemer "knew of facts that would put a reasonable person on notice that wrongful conduct caused" a risk to his safety.  *Alexander*, 382 F.3d at 1216.

Plaintiff claims that Mr. Shoaga cannot rely on plaintiff's statements in its discovery responses because Mr. Shoaga has disputed such incidents.  Docket No. 118 at 12 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250-51 (1986)).  Plaintiff, paradoxically, also argues that the Court should treat these incidents as undisputed.  *Id*., n.2.  The Court finds no basis not to consider the incidents reported in plaintiff's discovery responses.  The discovery responses are plainly admissible, *see* Fed. R. Evid. 801(d),[6] and plaintiff does not dispute them or present any contrary evidence.

### 3.  Remedies Available

Plaintiff's argument that the statute of limitations could not start to run until a physical injury occurred and plaintiff could sue for damages lacks supporting authority.  *See* Docket No. 118 at 11-12.  Plaintiff is correct that, under the Prison Litigation

---

[6] As filed, the interrogatory responses are unsigned by the personal representatives of the estate, see Docket No. 110-11 at 13, but plaintiff does not dispute them on such basis and the responses may be admissible in any event. *See Saria v. Massachusetts Mutual Life Insurance Company*, 228 F.R.D. 536, 538-39 (S.D. W. Va. 2005) ("When responses are only signed by an attorney, and not by the client, the attorney has effectively been made a witness."); Docket No. 110 at 9 n.1 ("Plaintiff's counsel indicated that the signature page(s) would be forthcoming as soon as they were received.  To date, though Defendant's counsel has requested the signature page(s), the signature(s) has not yet been provided.")

Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), Mr. Roemer could not bring a claim for compensatory damages without physical injury. Docket No. 118 at 11-12 (citing *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 808 n.6 (10th Cir. 1999)). Plaintiff, however, does not dispute that Mr. Roemer could have sought injunctive relief against defendants in their official capacities. *Id*. at 11. Additionally, plaintiff does not address nominal or punitive damages, which plaintiff seeks, Docket No. 141 at 23, and which Mr. Roemer could have sought even in the absence of physical injury. *Searles v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001) (holding that, notwithstanding the PLRA, "an award of nominal damages is mandatory upon a finding of a constitutional violation" and that a prisoner could seek punitive damages without showing a compensable, physical injury). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (internal quotation marks omitted). Plaintiff does not cite, and the Court is not aware of, any authority requiring that a particular remedy be available before a statute of limitation begins to run. Rather, "[a]s a general matter, a statute of limitations begins to run when the cause of action 'accrues' – that is, when 'the plaintiff can file suit and obtain relief.'" *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013) (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal*., 522 U.S. 192, 201 (1997)).

Here, the alleged injury is a constitutional violation, the deliberate indifference to a threat of serious harm to Mr. Roemer's safety. Docket No. 141 at 20-21, ¶ 96-97. Mr.

Roemer did not have to await physical injury to bring a claim based on the violation of his constitutional rights. To the extent Mr. Shoaga's actions violated Mr. Roemer's constitutional rights, those actions had already occurred and Mr. Roemer could seek nominal damages. Further, Mr. Roemer could seek a remedy to prevent future harm. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) ("It is true that one does not have to await the consummation of threatened injury to obtain preventive relief." (citing *Farmer*, 511 U.S. at 845)). As soon as Mr. Roemer was aware of sufficient facts to plead that prison officials were "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they [would] continue to do so," he could have sought injunctive relief. *Farmer*, 511 U.S. at 846.

### 4. *Continuing Violation Doctrine*

Plaintiff argues that the Court should apply the continuing violation doctrine because a single event gave rise to continuing injuries, which injuries include the death of Mr. Roemer that occurred within the statute of limitations period. Docket No. 118 at 13 (citing *Heard v. Sheahan*, 253 F.3d 316, 319-20 (7th Cir. 2001)). Plaintiff claims that the "single event [was] Mr. Shoaga's role in placing Mr. Farley in general population, which ultimately led to him killing Mr. Roemer." *Id*. As plaintiff acknowledges, the "Tenth Circuit has not yet recognized the continuing violation doctrine in § 1983 cases." Docket No. 118 at 13; *see also Canfield v. Douglas Cty.*, 619 F. App'x 774, 778-79 (10th Cir. 2015) (unpublished).

Defendant argues that, even if the continuing violation were applicable to § 1983 claims, it would not apply here since there is "no evidence, or even allegation, that

18

Shoaga committed any unlawful acts within the 2 years prior to the date of filing of the Complaint on June 12, 2014." Docket No. 122 at 6. The Court agrees. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)); *Sims v. New*, No. 08-cv-00794-CMA-MEH, 2009 WL 3234225, at *4 (D. Colo. Sept. 30, 2009) (holding that the statute of limitations began to run when the prisoner became aware that a letter placed in his file prevented his transfer and further injuries based on the letter within the limitations period did not allow application of the continuing violation doctrine). Plaintiff's reliance on *Heard* for the proposition that it is appropriate to bring a single suit that addresses events outside the limitations period is misplaced. *See* Docket No. 118 at 13. In *Heard,* the court compared cases where a single event outside the limitation period led to injuries within the limitations period to the situation before the court in which an ongoing hernia went untreated despite the prisoner requesting medical attention for months, including during the limitations period, and "every day that the defendants ignored the plaintiff's request for treatment increased his pain." *Heard*, 253 F.3d at 319. In fact, the case the *Heard* court cites in discussing single event cases – *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) – found that the continuing violation doctrine did not apply and that the plaintiff's claim was barred by the statute of limitations where the claim arose from a single event, the solicitation of false testimony. The *Heard* court further explained that, "[i]n between the case in which a single event gives rise to continuing injuries and the case in which a

19

continuous series of events gives rise to a cumulative injury is the case in which repeated events give rise to discrete injuries," and that even in such an intermediate case a plaintiff "would not be permitted to reach back to the first [event] by suing within the limitations period for the last [event]." *Heard*, 253 F.3d at 320. Plaintiff, likewise, cannot use the continuing violation doctrine to reach back to Mr. Shoaga's initial act, which is outside the limitations period, by suing for Mr. Roemer's death, which is within the limitations period. *See Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1169 (D. Colo. 2010) (finding that the inmate's due process claim accrued upon the "single discrete event" of his allegedly wrongful transfer and that the continuing effects of that transfer within the limitations period were not a continuing violation).

The Court finds that plaintiff's claim against Mr. Shoaga is barred by the statute of limitations. Mr. Roemer's cause of action accrued ten days before the June 13, 2012 murder, namely, by June 3, 2012, when he asked Officer Boyer to change cellmates but Officer Boyer declined the request; plaintiff, which holds that same claim, needed to file suit "within two years," i.e., by June 3, 2014, Colo. Rev. Stat. § 13-80-102(1), but did not file its complaint until June 12, 2014. Docket No. 1.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Docket No. 109] is **DENIED** as moot. It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 110] is **GRANTED**. It is further

**ORDERED** that all claims against defendant Ali Shoaga are dismissed.


DATED September 27, 2017.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge