IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01655-PAB-NYW

THE ESTATE OF JAMES ROEMER,

    Plaintiff,

v.

DAVID JOHNSON, in his individual capacity,
NATHAN ALGIEN, in his individual capacity,
THOMAS BOYER, in his individual capacity, and
CHASE FELZEIN, in his individual capacity,

    Defendants.

# ORDER

This matter is before the Court on Defendants Johnson, Algien, Felzein, and Boyer's Motion for Summary Judgment [Docket No. 145] and Plaintiff's Motion to Reconsider Order Granting Defendant Shoaga's Motion for Summary Judgment (Doc. 155) [Docket No. 160]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

This case arises from the June 13, 2012 murder of James Roemer by his cellmate, Paul Farley.

### A. Procedural History

The background of this case, and the various procedural twists and turns that have brought it to this point, are laid out more fully in the Court's September 27, 2017 order. Docket No. 155 (the "September 27 order"). In that order, the Court granted Ali Shoaga's summary judgment motion based on the two-year statute of limitations for 42

U.S.C. § 1983 claims in Colorado.[1]  *Id*. at 20-21.  The Court found that, at least ten days before his murder, Mr. Roemer was aware of the facts supporting his § 1983 claim for deliberate indifference to substantial risk of serious harm in violation of the Eighth Amendment.  *Id*. at 16.  As a result, Mr. Roemer's cause of action accrued on or before June 3, 2012 and yet his estate did not file suit until more than two years later.  The Court therefore dismissed plaintiff's claim against Mr. Shoaga as being barred by the statute of limitations.  *Id*. at 20.

Defendants' summary judgment motion incorporates by reference the same summary judgment arguments made by Mr. Shoaga, Docket No. 145 at 2, and plaintiff responds by incorporating its response to that argument.  Docket No. 148 at 8.  After the Court's September 27 order, the Court ordered supplemental briefing from the remaining parties on the statute of limitations issue.  Docket Nos. 156, 158, 159.  On October 4, 2017, plaintiff moved for reconsideration of the Court's September 27 order.  Docket No. 160.

### B.  **Factual Background**[2]

Mr. Farley has an well-documented history of violence and threats against other inmates.  Docket No. 155 at 2.  When Mr. Farley was transferred from a state prison in Arizona to the Colorado Department of Corrections ("DOC"), his record was reviewed by Mr. Shoaga, the chairperson of the administrative segregation hearing committee.  *Id*. at 4.  Despite Mr. Farley's history, Mr. Shoaga recommended that Mr. Farley not be

---

[1] The initial complaint misspelled Mr. Shoaga's name as "Showaga."  Docket No. 1.

[2] The following facts are undisputed by the parties unless otherwise indicated.

placed in administrative segregation, which meant that Mr. Farley was instead placed in the general prison population. *Id*.

Mr. Shoaga's decision was reviewed and affirmed by defendant David Johnson, the associate warden of DOC's Denver Reception and Diagnostic Center, the DOC facility where Mr. Farley was placed after arrival in Colorado. Defendant's Statement of Undisputed Material Facts ("DSUMF") 8; Docket No. 149 at 1. Defendant Nathan Algien, an offender services classification officer, assigned Mr. Farley to be housed at the DOC's Sterling Correctional Facility ("SCF"). DSUMF 23, 48-49.

Defendant Thomas Boyer, a Corrections Officer I, worked at SCF with defendant Chase Felzein, a housing lieutenant. DSUMF 56, 58. Both Mr. Roemer and Mr. Farley were assigned to Living Unit 2 in the medium security portion of SCF. DSUMF 61, 62. Because he was placed in the general population at SCF, Mr. Farley was required to have a cellmate. Docket No. 155 at 5. After approximately nine months with other cellmates, Mr. Farley was reassigned to a cell with Mr. Roemer. *Id*. This reassignment resulted from a kite turned in by four inmates asking for a cell reassignment. DSUMF 100. Messrs. Farley and Roemer agreed to live together as part of that request. DSUMF 101. Officer Boyer met with the four inmates, and both he and Lt. Felzein reviewed the request. DSUMF 102, 103.

In response to a discovery request in this case, plaintiff stated that "Mr. Roemer's relationship with Mr. Farley prior to his murder was permeated with fear and malcontent." Docket No. 110-11 at 10, Resp. to Interrogatory 21. On May 25, 2012, Mr. Roemer met with his mental health provider, Michelle Long, and expressed concerns about his safety, describing Mr. Farley as a "murderer." Docket No. 110-11 at

4, Resp. to Interrogatory No. 7.

Approximately two weeks before the murder, Mr. Farley became "extremely agitated with Mr. Roemer and . . . pinned [Mr. Roemer] against the wall of their cell and told him, 'Don't you know what I could do to you?'" Docket No. 110-11 at 10, Resp. to Interrogatory 21. "After that point, Mr. Roemer was extremely fearful of Mr. Farley and wanted not to be housed in a cell with him." *Id*.

Approximately ten days before the murder, Mr. Roemer told Officer Boyer that he "could not live with Mr. Farley due to safety concerns" and requested to move to a different cell to get away from Mr. Farley. Docket No. 110-11 at 4, Resp. to Interrogatory No. 7. Officer Boyer immediately denied the request. Docket No. 141 at 18, ¶ 84; Docket No. 148-12 at 1, ¶ 5. The request was allegedly denied because the two had asked to live together. *Id.*

On June 13, 2012, Mr. Farley strangled Mr. Roemer to death in their cell. Docket No. 155 at 6.

## II. ANALYSIS

The Court first considers plaintiff's motion for reconsideration and then turns to defendants' motion for summary judgment.

### A.  Motion for Reconsideration

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. *See Hatfield v. Bd. of Cty. Comm'rs for Converse Cty.*, 52 F.3d 858, 861 (10th Cir. 1995). It is, however, within the Court's discretion to reconsider its rulings. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008).

When doing so, the Court considers whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *See Vigil v. Colorado Dep't of Corrections*, No. 09-cv-01676-PAB-KLM, 2011 WL 1518660, at *1 (D. Colo. Apr. 20, 2011); *cf. Servants of the Paraclete v. Does*, 204 F. 3d 1005, 1012 (10th Cir. 2000) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.") (citations omitted).

Plaintiff's motion for reconsideration raises three arguments: (1) Mr. Roemer had no knowledge during his lifetime, nor would he have discovered with reasonable diligence, that Mr. Shoaga violated his constitutional rights; (2) plaintiff could not have discovered the relevant facts; and (3) the statute of limitations should be tolled for the time period it would have taken for Mr. Roemer to exhaust his administrative remedies. Docket No. 160 at 4-12.

### 1. Mr. Roemer's Knowledge

Plaintiff argues that it was improper for the Court to find that plaintiff's claim accrued when Mr. Roemer was aware that prison officials were deliberately indifferent to Mr. Roemer's safety when, to prove its claims, plaintiff must show that Mr. Shoaga specifically acted with deliberate indifference. Docket No. 160 at 7. Plaintiff also argues that Mr. Roemer would have had no reason to know of the facts it now uses to support its claim because he did not have access to the relevant records. *Id*. at 6.

Plaintiff builds its argument around various statements made by the Tenth Circuit

5

in *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381 (10th Cir. 1985). *See* Docket No. 160 at 3, 7. In *Maughan,* family members of people who died of leukemia near a Utah uranium processing center brought wrongful death claims after learning that radiation from the center may have caused the decedents' leukemia. 758 F.2d at 1381. Applying the Utah "exceptional circumstances" doctrine, the court held that the "discovery rule tolls the statute of limitations until the plaintiff knows or should know of the facts constituting the cause of action." *Id*. at 1387 (citations omitted). The court held that plaintiffs' wrongful death claims did not accrue until they became aware of the facts from which they could infer causation. *Id*. The court found that the plaintiffs' "mere suspicion" of the causation of the cancer was insufficient for a cause of action to accrue. *Id*. Plaintiff analogizes this case to *Maughan*, claiming that Mr. Roemer's suspicion that he was in danger would not have been enough to allow him to bring a claim against Mr. Shoaga. Docket No. 160 at 7.

Plaintiff's argument is unpersuasive. In *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993), the court held that a plaintiff's claim that he was illegally rejected from medical school accrued when he "knew or had reason to know of the injury." The court rejected the plaintiff's argument that his claim did not accrue because "he was not aware of certain 'critical facts' until much later." *Id*. In *Alexander v. Oklahoma*, 382 F.3d 1206 (10th Cir. 2004), the court interpreted *Baker* as finding that "a plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Id*. at 1216 (citing *Baker*, 991 F.2d at 632). The court held that the plaintiffs' § 1983 claims had accrued at the time of the incident in question,

when there were "obvious signs of injury," even though the plaintiffs "did not know the level of culpability or responsibility" of the defendants until a later report issued. *Id*. at 1215-16. Likewise, Mr. Roemer's lack of awareness of the role Mr. Shoaga played is not a basis to find that the claim had not accrued when Mr. Roemer was aware of his claimed injury, i.e., that his constitutional rights had been violated by the refusal of the DOC to remove him from Mr. Farley's cell. *See* Docket No. 155 at 15.

Courts outside the Tenth Circuit have also found that a plaintiff need not be aware of a defendant's culpability or identity for the plaintiff's claim to accrue. In *Diminnie v. United States*, 728 F.2d 301, 303 (6th Cir. 1984), the Sixth Circuit rejected the contention that a plaintiff's "cause of action did not accrue until the date when he first learned the identity of the culprit." Rather, the court found that "before the accrual of a cause of action against the United States under the FTCA may be deferred because of the plaintiff's inability to identify the party whose conduct triggered the injury, it must be shown that the United States itself played a wrongful role in concealing the culprit's identity." *Id*. at 305. Because the plaintiff failed to show fraudulent concealment, the court found that his claim had accrued before he knew the tortfeasor's identity and was barred by the statute of limitations. *Id*.; *see also Gonzalez-Bernal v. United States*, 907 F.2d 246, 250 (1st Cir. 1990) ("Like in *Diminnie*, it was not necessary for the appellants to know the identities of Domínguez and Maravilla for their cause of action to accrue.").

Plaintiff's theory is that Mr. Shoaga violated Mr. Roemer's rights by failing to recommend that Mr. Farley be placed in administrative segregation instead of being

7

placed in the general population where he would have a cellmate, which created an unreasonable risk to Mr. Roemer's safety. Docket No. 110 at 17. Plaintiff does not argue fraudulent concealment. *See id*. Mr. Roemer was aware that Mr. Farley was in the general population and had a cellmate. To the extent the danger presented by Mr. Farley being Mr. Roemer's cellmate was a violation of Mr. Roemer's constitutional rights, Mr. Roemer was "armed with the facts about the harm done to him." *United States v. Kubrick*, 444 U.S. 111, 123 (1979). Further, Mr. Roemer was aware that Mr. Farley was a murderer, that Mr. Farley threatened Mr. Roemer, and that Officer Boyer denied Mr. Roemer's request to change cellmates. Docket No. 155 at 14-15. Mr. Roemer's constitutional "injuries and the general cause of those injuries were obvious" prior to his death, which was sufficient to "start the running of the statute of limitations." *Alexander*, 382 F.3d at 1216. Given his knowledge of the danger that Mr. Farley posed to him, Mr. Roemer did not need to have "conclusive evidence of the cause of [his] injury," i.e., who within the DOC allowed Mr. Farley to be in the general population. *Alexander*, 382 F.3d at 1215-16. Like *Alexander*, this case presents "difficult facts," but the harsh result does not allow the Court to depart from precedent. *Id*. at 1215; *see also Kubrick*, 444 U.S. at 125 ("It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose.")

### 2. Discovery by the Estate

Plaintiff argues that the statute of limitations should run from its rediscovery of the facts underlying its claims because, "[e]ven assuming it is correct that Roemer knew

that he had a viable Eighth Amendment claim on June 3, 2012[,] . . . that knowledge was extinguished when Roemer was murdered." Docket No. 160 at 9. Plaintiff cites no authority for this proposition, *id*., and does not show that the Court misapprehended controlling law or clearly erred in finding that plaintiff's claims did not "accrue separately at the time the estate became aware of the relevant facts." Docket No. 155 at 11; *see also Espinoza v. O'Dell*, 633 P.2d 455, 466 (Colo. 1981) ("[T]he decedent's estate, by necessity, stands in the decedent's shoes in a state survival action." (citing *Publix Cab Co. v. Colorado National Bank*, 338 P.2d 702 (Colo. 1959)).

### 3. Tolling for Administrative Remedies

Plaintiff argues that the statute of limitations should be tolled for the period of time that it would have taken Mr. Roemer to seek the required administrative remedies for his claims had he done so in his lifetime. Docket No 160 at 10-12; *see also Gillings v. Banvelos,* 650 F. App'x 622, 624 (10th Cir. 2016) (unpublished) ("[P]laintiffs who fail to diligently pursue their claims after exhausting their administrative remedies are not entitled to equitable tolling under Colorado's extraordinary-circumstances doctrine." (citations and emphasis omitted)). Plaintiff did not raise this argument in the initial briefing and provides no explanation for why it could not have done so. Therefore, this argument was waived. *See* Docket No. 118 at 10-14; *Servants of the Paraclete*, 204 F. 3d at 1012 ("It is not appropriate [in a motion for reconsideration] to . . . advance arguments that could have been raised in prior briefing."). The Court will deny plaintiff's motion for reconsideration.

## B. Defendants' Motion for Summary Judgment[3]

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, when "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513,

---

[3] Plaintiff requests a hearing on defendants' motion for summary judgment, but the Court has determined that it can resolve the motion without a hearing. *See* D.C.COLO.LCivR 7.1(h).

1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

Plaintiff raises the same statute of limitations argument against the remaining defendants as he did against Mr. Shoaga, namely, that Mr. Roemer was unaware of the facts relating to defendants' knowledge about Mr. Farley's dangerousness. Docket No. 159 at 3. Plaintiff also focuses on Mr. Farley's "well-documented history of dangerousness" and claims that Mr. Roemer could not have known of such records because inmates are barred from accessing other inmates records. *Id*. at 5 (emphasis removed).

For the reasons discussed above and in the September 27 order, the Court finds that, even if Mr. Roemer was unaware of the specific facts that would support a claim, his claim nonetheless accrued prior to his murder. *See* Docket No. 155 at 15-16. As the Court found, Mr. Roemer knew of his injury and the general cause of that injury at least by the time that he spoke with Officer Boyer and unsuccessfully requested to

change cellmates. *Id*. at 15. Plaintiff's arguments that Mr. Roemer did not know the specifics and extent of Mr. Farley's history are unavailing in light of Mr. Roemer's knowledge that Mr. Farley was a murderer who presented a serious danger to him and in light of Mr. Roemer's knowledge that Officer Boyer had denied his request to change cellmates. *Id.* at 14-16.[4] As plaintiff acknowledges, "Defendant Johnson's constitutionally violative conduct was nearly identical to Defendant Shoaga's" and, thus, the same reasoning applies to whether the statute of limitations should bar plaintiff's claim against Mr. Johnson. Docket No. 159 at 3 n.2. Plaintiff's claim against Lt. Felzein and Lt. Algien is also barred by the statute of limitations because Mr. Roemer's knowledge of the general cause of his injuries was sufficient for his claim to accrue, even if he was not aware of facts concerning their identity, role, or culpability. *See Baker*, 991 F.2d at 632; *Diminnie*, 728 F.2d at 305. Finally, the Court finds that plaintiff's claim against Officer Boyer is barred by the statute of limitations because, in addition to Mr. Roemer's general knowledge of the cause of his injuries, Mr. Roemer knew specifically that Officer Boyer denied Mr. Roemer's request to change cells. *See* Docket No. 155 at 16; Docket No. 148-12 at 1, ¶ 6. Defendants' allegedly wrongful actions were all committed outside the two-year statute of limitations period, and Mr. Roemer's murder within the limitations period does not provide a basis to reach back to those earlier events. See Docket No. 155 at 20 (citing *Matthews v. Wiley*, 744 F. Supp.

---

[4] Officer Boyer and Lt. Felzein have submitted affidavits stating that Mr. Roemer had never expressed fear of Mr. Farley to them. Docket No. 145-4 at 9, ¶ 58; Docket No. 145-5 at 8, ¶ 60. Even after the Court's September 27 order, plaintiff has made no attempt to withdraw its prior admissions that show Mr. Roemer was aware of the danger posed by Mr. Farley and discussed his safety concerns with Officer Boyer. *See* Docket Nos. 159, 160.

12

2d 1159, 1169 (D. Colo. 2010)). Therefore, the Court will grant defendants' motion for summary judgment and enter judgment in favor of all defendants based on the statute of limitations.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants Johnson, Algien, Felzein, and Boyer's Motion for Summary Judgment [Docket No. 145] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion to Reconsider Order Granting Defendant Shoaga's Motion for Summary Judgment (Doc. 155) [Docket No. 160] is **DENIED**. It is further

**ORDERED** that judgment shall enter in favor of defendants and against plaintiff. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED October 12, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge