IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 14-cv-01655-PAB-NYW

THE ESTATE OF JAMES ROEMER,

       Plaintiff,

v.

ALI SHOAGA, in his individual capacity,
DAVID JOHNSON, in his individual capacity,
NATHAN ALGIEN, in his individual capacity, and
CHASE FELZEIN, in his individual capacity,

       Defendants.

---

**ORDER**

---

This matter is before the Court on Plaintiff's Motion for Partial Summary
Judgment [Docket No. 109] and defendant Ali Shoaga's Motion for Summary Judgment
[Docket No. 110]. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This case arises out of the June 13, 2012 murder of James Roemer by his
cellmate, Paul Farley, while in the custody of the Colorado Department of Corrections
("CDOC"). *See* Docket No. 110 at 9, ¶ 46; Docket No. 109 at 2, ¶ 2; Docket No. 136 at
2, 6.

In July 2011, Mr. Farley was transferred from the Arizona Department of
Corrections ("ADC") to the CDOC to serve a sentence for a conviction in Colorado.

---

[1]The facts stated below are undisputed unless otherwise indicated.

Docket No. 109 at 3, ¶ 5; Docket No. 110 at 1, ¶ 1; Docket No. 136 at 6.  Before Mr.

Farley's transfer, an ADC official, Herb Haley, wrote a letter summarizing Mr. Farley's

history with the ADC ("Haley letter").  Docket No. 109 at 3, ¶ 6.  That letter was included

among the materials provided to the CDOC and was considered by defendant Ali

Shoaga ("defendant") in determining whether to recommend Mr. Farley for

administrative segregation.  *See* Docket No. 109 at 6, ¶ 23; Docket No. 110 at 2, 4,

¶¶ 5, 15; Docket No. 110-4 at 2-4 (Haley letter).

　　　According to the Haley letter, Mr. Farley had been incarcerated with the ADC

since August 6, 1997 for armed robbery, aggravated assault, manslaughter, and theft

by extortion.  Docket No. 110-4 at 2.  The letter stated that Mr. Farley had "an extensive

disciplinary history, most notable for: causing death/great bodily harm, sexual assault,

weapons possession/manufacture, assaults, fighting, and throwing on staff and other

inmates."  *Id.* at 3.  Mr. Farley's ADC records reflect the following incidents that

occurred during his incarceration with the ADC: on November 3, 1997, he received a

prison disciplinary conviction for fighting with other inmates; on August 13, 1998, he

received a disciplinary conviction for possessing dangerous contraband, including

escape paraphernalia; on May 18, 1999, he received a disciplinary conviction for

sexually assaulting a cellmate with a lethal weapon; in October 2000, he escaped

custody using force while being transported from Kansas to Arizona; on July 2, 2000,

he received a disciplinary conviction for slicing open his cellmate's back with a

razorblade; and in 2001, he assisted an inmate in an adjoining cell commit suicide by

strangling him with a bed sheet, which resulted in Mr. Farley's conviction for

manslaughter.  Docket No. 110 at 2-3, ¶ 6.  Several of these incidents were specifically

2

noted in the Haley letter. *See* Docket No. 110-4 at 3-4. The Haley letter also noted that Mr. Farley had made several threatening statements regarding other inmates, including "documented statements to investigators that he 'had tried to enter protective segregation ["PS"] for the purposes of killing a PS inmate,'" and statements such as "I just want to do somebody," "I want to put steel in someone," and "it would be easier to find a victim in PS." *Id.* Regarding the latter three statements, the letter noted that the "likelihood of these statements being 'bravado' to ensure a single cell setting might explain the[] statements, but the violence [Mr. Farley] has demonstrated in the past has clearly established a threat towards other inmates; and in turn a potential threat towards inmate Farley himself due to his actions and statements." *Id.*[2] Finally, the Haley letter indicated that Mr. Farley's protection issues were "a result of 'disrespecting' Aryan Brotherhood hierarchy," and that he was identified as either a "Victim" or a "Predator" with respect to thirty-one inmates on his "Do Not House With" list. *Id.* at 3. As a result of Mr. Farley's "predatory behavior," the ADC decided, on April 28, 2009, to "override" his "classification to maximum custody," where it was determined he would "remain . . .

_____

[2]Plaintiff disputes defendant's assertion that the ADC records do not indicate when Mr. Farley made the last three statements, arguing that "Mr. Farley's full file reflects those statements were made since 2009." Docket No. 118 at 4, ¶ 13 (citing Ex. 2, 3, 4; Doc. 109-3 at 2-3); *see also* Docket No. 110 at 4, ¶ 13. However, the records plaintiff cites do not indicate when Mr. Farley made the statements. *See* Docket No. 118-2 (record from July 11, 2008 hearing recommending that Mr. Farley "be given the opportunity to conform to Close custody"); Docket No. 118-3 (record from November 6, 2008 assigning Mr. Farley to investigative detention because he was "considered a suspect in an [unspecified] offense occurring within the institution"); Docket No. 118-4 (record from May 1, 2009 recommending "custody O/R to max per Central Office due to predatory behavior and violence history," but making no mention of threatening statements); Docket No. 109-3 at 2-3 (noting only that Mr. Farley "has made" threatening statements and was placed in maximum custody on April 28, 2009 "due to his predatory behavior").

while in the ADC." *Id.* at 4.

After arriving at the Denver Reception and Diagnostic Center ("DRDC"), the CDOC's intake prison, in July 2011, a case manager completed a Notice for Administrative Segregation Hearing to determine whether Mr. Farley was safe enough for general population or would need to be placed in administrative segregation within the CDOC. Docket No. 109 at 4, ¶ 11; Docket No. 110 at 1, 4, ¶¶ 2, 16. The notice recited some of Mr. Farley's disciplinary infractions and stated that his "excessive violation of policy, procedures, and disregard for authority poses a threat to the safety and security of the facility, staff, and other offenders." Docket No. 110-1 at 1. A hearing was held on September 1, 2011. Docket No. 110 at 1, ¶ 2; Docket No. 110-2 at 1. Defendant, a Case Manager II with the CDOC, was the chairperson of the three-member board that presided over the hearing. Docket No. 110 at 1, ¶ 3. As the chairperson, defendant was responsible for making the recommendation as to whether Mr. Farley should be placed in administrative segregation. *Id.* at 2, ¶ 4.[3] On September 1, 2011, defendant recommended that Mr. Farley not be placed in administrative segregation. Docket No. 110-2. Defendant explained his recommendation as follows:

> At his hearing, offender Farley admitted that he was guilty of the infractions committed while in Arizona. The available information indicates that all of offender Farley's disciplinary infractions happened nearly a decade ago. The information available also seems to indicate that some of the reason for his confinement in Segregation while in Arizona was due to custody issues. There is no documented evidence of disciplinary infractions within the last ten years.

---

[3] The parties dispute the role played by the other board members. *See* Docket No. 118 at 2-3, ¶ 4 (asserting that the other committee members "were not independent voices").

*Id.* During his deposition, defendant also stated that he considered the CDOC's ability to place offenders in more restrictive housing, such as "close custody" housing. Docket No. 110 at 6, ¶ 27.[4] In recommending that Mr. Farley not be placed in administrative segregation, defendant knew it was likely Mr. Farley would be placed in general population with a cellmate. Docket No. 109 at 8, ¶¶ 35-36. However, defendant assumed that Mr. Farley would be properly classified and would receive appropriate treatment and programming. Docket No. 110 at 8, ¶ 41.[5]

David Johnson, the associate warden at DRDC, affirmed the hearing board's recommendation, Docket No. 109 at 8, ¶ 34, and Mr. Farley was transferred to Sterling Correctional Facility ("SCF") in Sterling, Colorado on September 22, 2011. Docket No. 110 at 9, ¶ 45. At some point, Mr. Farley was assigned to a cell with Mr. Roemer. *See id.*, ¶ 46. On June 13, 2012, Mr. Farley murdered Mr. Roemer in their cell. *Id.*

Plaintiff, Mr. Roemer's estate, filed this case on June 12, 2014. Docket No. 1. Plaintiff asserts an Eighth Amendment claim under 42 U.S.C. § 1983 alleging that defendant Shoaga acted with deliberate indifference to the substantial risk of serious harm posed by Mr. Farley in not recommending that Mr. Farley be placed in administrative segregation. Docket No. 141 at 20-21, ¶¶ 95-97. On September 27, 2017, the Court granted summary judgment in favor of defendant Shoaga after finding

---

[4]"Close custody" reflects a particular "degree of supervision" required for an offender. Docket No. 110 at 6, ¶ 29. It is the highest custody level after administrative segregation. *Id.* Defendant testified that he thought the CDOC's classification system and treatment programs would "mitigate" any risk posed by Mr. Farley. *See* Docket No. 110-3 at 33, 40:11-25.

[5]Plaintiff disputes the reasonableness of this assumption. *See* Docket No. 118 at 8, ¶ 41.

plaintiff's claim was barred by the statute of limitations. Docket No. 155 at 20. In the same order, the Court denied as moot plaintiff's motion for partial summary judgment. *See id.* at 20. On October 12, 2017, the Court granted summary judgment in favor of the remaining defendants on statute-of-limitations grounds. Docket No. 175. Plaintiff appealed both summary judgment orders. Docket No. 179.

On March 7, 2019, the Tenth Circuit reversed the Court's summary judgment rulings, holding that the Court had erred by failing to determine when plaintiff's "claims against *each* defendant accrued." Docket No. 186 at 23. The Tenth Circuit also concluded that, with the exception of Thomas Boyer, defendants had failed to establish that plaintiff's claims accrued outside of the relevant limitations period. *Id.*

Following the Tenth Circuit's remand, *see id.*, the Court directed the parties to file status reports identifying the issues that remained to be resolved in light of the Tenth Circuit's decision. Docket No. 188. Based on those status reports and the Tenth Circuit's ruling, the Court determined that the next step in this case is for the Court to determine whether defendants are entitled to summary judgment on any ground other than the statute of limitations. Docket No. 191 at 1. On April 24, 2019, the Court reinstated the parties' summary judgment motions. Docket No. 191.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if

under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

### A.  Qualified Immunity

Defendant raises the defense of qualified immunity.  *See* Docket No. 110 at 12-13.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  When a defendant asserts a qualified immunity defense, the plaintiff has a "heavy two-part burden" of establishing "(1) that the defendant's action violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions."  *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (internal quotation marks omitted).  Failure to satisfy either prong of this test will result in a grant of qualified immunity to the defendant.  *Id.*  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When evaluating a claim of qualified immunity, "'clearly established law' should not be defined 'at a high level of generality.'"  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))).  "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014).  Ordinarily, a right is clearly established if there is "a

Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted). This does not require a case "*directly* on point." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted) (emphasis added). On the other hand, precedent that merely states "a general proposition of applicable law" will not make a right "clearly established" for purposes of qualified immunity. *Grissom*, 902 F.3d at 1168. A right is clearly established only if existing precedent places "the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)).

### B.  Eighth Amendment

Plaintiff asserts an Eighth Amendment claim against Mr. Shoaga based on his failure to recommend Mr. Farley's placement in administrative segregation. Docket No. 141 at 20-21, ¶¶ 95-97. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("The [Eighth] Amendment . . . requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199 (1989))). "The analysis [of an Eighth Amendment claim] should not be based on 'a court's idea of how best to operate a detention facility,'" but should reflect "the evolving standards of decency that mark the progress of a maturing society," which the Tenth Circuit has characterized as a "lofty

standard." *DeSpain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981)). To prevail on the claim that Mr. Shoaga violated the Eighth Amendment, plaintiff must show that (1) objectively, the harm it complains of is sufficiently "serious" to merit constitutional protection, and (2) Mr. Shoaga was subjectively aware of a substantial risk to Mr. Roemer's health or safety and acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

Regarding the objective element, plaintiff must establish that Mr. Roemer was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 835, which requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *compare Benshoof v. Layton*, 351 F. App'x 274, 277 (10th Cir. 2009) (unpublished) (finding objective element satisfied where plaintiff was forced to remain in cell with stinging fire ants for six days), *with Montez v. Lampert*, 595 F. App'x 789, 792 (10th Cir. 2014) (unpublished) ("[A] 15-year-old hernia operation would neither present symptoms readily ascertainable to a lay person, nor make it obvious to a lay person that a bottom-bunk assignment was necessary. Montez thus fails the objective prong of the *Farmer* test.").

As to the subjective element, the Eighth Amendment does not reach a prison official's conduct unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Verdecia v. Adams*, 327

F.3d 1171, 1175-76 (10th Cir. 2003) ("Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." (internal citations omitted)).  A prisoner must therefore establish "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Martinez*, 563 F.3d at 1089 (quotations omitted).  An action or inaction unaccompanied by a subjective awareness of an unreasonable risk of harm does not constitute "punishment" within the meaning of the Eighth Amendment.  *Farmer*, 511 U.S. at 837-38.  A court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."  *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also Farmer*, 511 U.S. 842 (noting that state of mind can be established with circumstantial evidence and "from the very fact that the risk was obvious").  The negligent conduct of a prison official is, in all cases, insufficient to rise to the level of deliberate indifference.  *Farmer*, 511 U.S. at 835 ("Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety" (quotations omitted)).

### C.  Plaintiff Has Failed to Show that Defendant Shoaga Violated His Clearly Established Rights Under the Eighth Amendment

The Court need not decide whether Mr. Shoaga's failure to recommend Mr. Farley's placement in administrative segregation violated Mr. Roemer's rights under the Eighth Amendment.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that lower courts may exercise their "discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the

particular case at hand").[6]  Even if Mr. Shoaga's conduct did rise to the level of an

Eighth Amendment violation, there was no clearly established law at the time of his

recommendation that would have placed the "constitutional question beyond debate."

*Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)).[7]

---

[6]Some courts have determined that the deliberate indifference part of an Eighth Amendment claim and the clearly established prong of the qualified immunity analysis collapse because "deliberately indifferent conduct can never be objectively reasonable for purposes of qualified immunity." *Cox v. Quinn*, 828 F.3d 227, 238 n.4 (4th Cir. 2016); *see, e.g.*, *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (holding that genuine issue of fact as to merits of Eighth Amendment claim precluded summary judgment on the basis of qualified immunity because a reasonable person in the defendant's position "could not [have] believe[d] that her actions comported with clearly established law while also believing that there [was] an excessive risk to the plaintiffs and failing to adequately respond to that risk"); *Delgado-Brunet v. Clark*, 93 F.3d 339, 345 (7th Cir. 1996) (stating, in the context of an Eighth Amendment claim, that "no one in 1989 could reasonably have believed that he could have deliberately ignored a known threat or danger"). However, this is not the law in the Tenth Circuit. *See, e.g.*, *Perry v. Durborow*, 892 F.3d 1116, 1122, 1127 (10th Cir. 2018) (assuming that the plaintiff had successfully demonstrated that the defendant had acted with deliberate indifference to a substantial risk of harm, but concluding that the contours of the plaintiff's constitutional right were not clearly established at the time of the alleged violation); *accord Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002) (holding that, even when "the constitutional issue turns on the officers' [deliberate indifference to a substantial risk of serious harm], courts must still consider whether – assuming the facts in the injured party's favor – it would be clear to a reasonable officer that his conduct was unlawful").

[7]Plaintiff contends that the Court is precluded from reconsidering the clearly established prong of the qualified immunity analysis in light of its earlier ruling, at the motion to dismiss stage, that plaintiff's Eighth Amendment rights were clearly established at the time of defendant's alleged constitutional violation.  *See* Docket No. 118 at 14-15.  The Court disagrees.  As the Tenth Circuit has explained,

> [a] district court's decision denying a defendant's motion to dismiss on qualified immunity is not law of the case for purposes of a subsequent motion for summary judgment on qualified immunity.  Law of the case does not apply because a motion to dismiss and a motion for summary judgment do not raise the 'same issues.'  Different 'legally relevant factors'

Viewed in a light most favorable to plaintiff, the evidence shows that defendant was aware of the following facts when he recommended Mr. Farley's placement in general population: (1) Mr. Farley had been incarcerated in the ADC for armed robbery, aggravated assault, manslaughter, and theft by extortion, Docket No. 110-4 at 2; Docket No. 110 at 2, ¶ 5; (2) Mr. Farley had engaged in violent behavior toward other inmates in prison, including assault, sexual assault, and assisting another inmate to commit suicide, which resulted in a manslaughter conviction, Docket No. 110 at 2, ¶ 6; (3) at the time of Mr. Farley's transfer to CDOC, it had been over ten years since his last disciplinary infraction, *id.* at 6, ¶ 24; Docket No. 118 at 6, ¶ 24; (4) Mr. Farley had made statements at some point during his incarceration in the ADC that he "just want[ed] to do somebody," that he "want[ed] to put steel in someone," and that "it would

_____

are under consideration on a motion to dismiss and a motion for summary judgment.

*Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir. 2006), *judgment vacated on other grounds*, 497 F.3d 1122 (10th Cir. 2007); *see also Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2014 WL 3932231, at *7 n. 12 (D. Colo. Aug. 11, 2014) (rejecting argument that the court was bound by its decision denying qualified immunity at the motion to dismiss stage and explaining that "the Court did not decide as a matter of law that Defendant was not entitled to qualified immunity . . . , but rather that Plaintiff had alleged enough facts concerning his claims for them to survive that stage of the proceedings") (report and recommendation adopted).  Moreover, the Court resolved defendants' motion to dismiss without the benefit of more recent Supreme Court decisions clarifying the nature of the qualified immunity analysis.  *See, e.g.*, *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (reversing the Tenth Circuit's denial of qualified immunity on the ground that the panel majority "misunderstood the 'clearly established' analysis" by defining the right at issue at too high a level of generality).  Given these intervening decisions, the Court declines to rely on the law of the case doctrine to decide whether defendant is entitled to summary judgment.  *See Homans v. City of Albuquerque*, 366 F.3d 900, 904 (10th Cir. 2004) (explaining that the law of the case doctrine "is solely a rule of practice" and therefore "discretionary rather than mandatory" (internal quotation marks omitted)).

be easier to find a victim in [protective segregation]," Docket No. 110 at 4, ¶ 13;[8] (5) while in the custody of the ADC, Mr. Farley was placed in maximum custody, or administrative segregation, at various points due to his predatory behavior, *id.* at 4, ¶ 11; Docket No. 118 at 3-4, ¶ 11, and was being held in maximum custody at the time of his transfer to the CDOC, Docket No. 110 at 4, ¶ 11; Docket No. 110-4 at 4; and (6) Herb Haley, a case manager with the ADC, had expressed in a letter dated June 23, 2011 that "the violence [Mr. Farley] has demonstrated in the past has clearly established a threat towards other inmates." Docket No. 110 at 4, ¶ 14; Docket No. 110-4 at 3. Additionally, Mr. Farley testified at the administrative segregation hearing that he had committed to turning his life around since engaging in his most recent violent acts and had completed numerous self-help programs in the ADC, including programs for anger management and substance abuse awareness. Docket No. 110 at 7, ¶ 32. It is undisputed that defendant made the decision not to recommend Mr. Farley's placement in administrative segregation because it had been over ten years since Mr. Farley's last documented disciplinary infraction and defendant believed that at least some of Mr. Farley's conduct in the ADC related to gang issues that would not follow him to Colorado. *See* Docket No. 110 at 6, ¶¶ 24-25; Docket No. 118 at 6-7, ¶¶ 24-25 (not disputing that Mr. Shoaga made the decision not to recommend Mr. Farley for administrative segregation because it had been over ten years since his last disciplinary infraction and Mr. Shoaga believed that Mr. Farley's custody issues would

---

[8]As noted earlier, there is no evidence regarding when Mr. Farley made these statements. *See supra* n.2.

not follow him to Colorado); Docket No. 110-2 at 1; Docket No. 110-3 at 20, 23:1-12.[9]

Mr. Shoaga nonetheless acknowledged during his deposition that Mr. Farley posed more than a "low" risk of danger to other inmates, Docket No. 110-3 at 26, 34, 36, 34:14-18, 41:15-22, 43:4-15, and that, by failing to recommend Mr. Farley for placement in administrative segregation, it was likely Mr. Farley would be placed in general population with a cellmate. Docket No. 109 at 8, ¶¶ 35-36; Docket No. 109-9 at 10, 58:17-23.

The Court finds these facts insufficient to demonstrate a violation of Mr. Roemer's clearly established rights under the Eighth Amendment. Plaintiff does not expressly address the clearly established prong of the qualified immunity analysis in its response brief. *See generally* Docket No. 118. Instead, plaintiff relies on a prior order in which the Court, citing *Farmer*, held that plaintiff's allegations were sufficient to overcome defendant's qualified immunity defense. *See id.* at 14-15, 19.

As noted above, recent decisions by the Supreme Court have clarified the qualified immunity analysis and cautioned courts not to define the statutory or constitutional right at issue at too high a level of generality. *See, e.g.*, *White*, 137 S. Ct. 548. In *White*, for example, the Supreme Court reversed the Tenth Circuit's denial of qualified immunity in a Fourth Amendment excessive force case, holding that the general legal principles announced in *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Graham v. Connor*, 490 U.S. 386 (1989), were not sufficiently particularized to the facts

_____

[9]Plaintiff disputes the reasonableness of Mr. Shoaga's belief that Mr. Farley's gang-related "custody issues" would not follow him to Colorado, given the extensiveness of Mr. Farley's disciplinary record. Docket No. 118 at 7, ¶ 25.

in *White* to create clearly established law outside of an obvious Fourth Amendment violation. *See White*, 137 S. Ct. at 552 (internal quotation marks omitted). Because the Supreme Court determined that the defendant's conduct was not a "run-of-the-mill Fourth Amendment violation," the Tenth Circuit's failure to "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment" necessitated reversal. *Id.*

Heeding *White*'s warning with respect to the "clearly established" inquiry, the Tenth Circuit in *Perry v. Durborow*, 892 F.3d 1116 (10th Cir. 2018), reversed the denial of qualified immunity, holding, as the Supreme Court did in *White*, that the trial court had defined the right at issue "at an unacceptably high level of generality." *Perry*, 892 F.3d at 1124 (quoting *White*, 137 S. Ct. at 552). The court specifically determined that the two cases on which the district court had relied in denying qualified immunity, one of which stood for the "general proposition that it is clearly established that prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment," did not demonstrate that the defendant had violated the plaintiff's clearly established constitutional rights by failing to create and enforce policies to protect her from being raped by a male prison guard. *Perry*, 892 F.3d at 1118-19, 1124. With regard to three, more factually analogous cases cited by the plaintiff on appeal, the Court reasoned that the fact that "Durborow was unaware of any previous sexual assaults at the Jail remain[ed] a critical distinction" that rendered the other cases insufficient to place the constitutional question beyond debate. *Id.* at 1127.

*White* and *Perry* illustrate the level at which district courts must define a plaintiff's

constitutional rights for purposes of the qualified immunity analysis. Applying that guidance in this case, the relevant inquiry is not whether Roemer had a clearly established Eighth Amendment right to be protected from attack by another inmate. Rather, to overcome defendant's qualified immunity defense, plaintiff must show that it was clearly established at the time of Mr. Roemer's murder that a prison official, presented with an inmate having a demonstrated history of violence in prison but no disciplinary infractions in over ten years, acts with deliberate indifference to a substantial risk of serious harm by failing to recommend the inmate's placement in administrative segregation.[10]

*Farmer* is insufficient, standing alone, to satisfy this burden. As the court noted in *Perry*, *Farmer* merely "set forth the appropriate framework for determining whether a prison official's deliberate indifference violates the Eighth Amendment." *Perry*, 892 F.3d at 1125. It did not "apply that framework to the facts of the case," but "remanded the constitutional question to the lower court for resolution." *Id.* In other words, the Supreme Court in *Farmer* did not decide whether the defendants acted with deliberate indifference to a substantial risk of serious harm by placing the plaintiff, a transgender inmate, in general population at a high security federal prison. *See Farmer*, 511 U.S. at 849 (remanding the case for the district court to determine, in the first instance, whether

---

[10]Plaintiff argues that, in light of testimony by Dr. Darren Lish that Mr. Farley's "homicidal behavior [was] not motivated by a mental illness that [could] not be cured, but rather anti-personality disorder," the ten-year lapse in time between Mr. Farley's last act of violence and Mr. Shoaga's recommendation "is irrelevant to the question of Mr. Farley's dangerousness." Docket No. 118 at 16. As defendant points out, however, Mr. Farley was first diagnosed with antisocial personality disorder in April 2013. *See* Docket No. 122 at 10; Docket No. 118-5 at 13, 45:9-24. Mr. Shoaga therefore did not have the benefit of that diagnosis when he made his recommendation in 2011.

the defendants had violated the plaintiff's Eighth Amendment rights under the proper standard for deliberate indifference). Even if *Farmer* did resolve the ultimate constitutional question, the case involved materially different facts from the ones here. In *Farmer*, the prison officials allegedly acted with deliberate indifference by placing the plaintiff in general population at a high security prison despite knowing that her status as a transgender inmate would make her particularly vulnerable to sexual violence. *Id.* at 831. Here, in contrast, the asserted risk of harm did not arise from any particular vulnerability of Mr. Roemer, but from Mr. Farley's history of violence in prison. Thus, this case involves a distinct inquiry into whether, and in what circumstances, the Eighth Amendment requires an inmate with a history of violence to be placed in administrative segregation for the protection of other inmates. Given these factual differences, and *Farmer*'s procedural posture, *Farmer* would not have made clear to a reasonable prison official in defendant's position that the failure to recommend Mr. Farley's placement in administrative segregation would constitute a violation of Mr. Roemer's Eighth Amendment rights. *See Estate of Ford*, 301 F.3d at 1051 (concluding that *Farmer* would not have made clear to a "reasonable prison official when the risk of harm from double-celling psychiatric inmates with one another changes from being *a* risk of *some* harm to a *substantial* risk of *serious* harm"); *Shauf v. Rios*, 313 F. Supp. 3d 1262, 1273 (W.D. Okla. 2018) (finding *Farmer* insufficient to "alert officials in [the defendant's] position that misrepresenting relevant misconduct history or approving a violent inmate's transfer can pose a substantial risk to other inmates sufficient to implicate the Eighth Amendment").

The Court therefore turns to whether there is any other authority that would have placed the "constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)). In its motion for partial summary judgment, plaintiff relies on *Silverstein v. Bureau of Prisons*, 559 F. App'x 739 (10th Cir. 2014) (unpublished), for the proposition that "Mr. Shoaga's reason for not assigning Mr. Farley to administrative segregation – that Mr. Farley had not murdered anyone for ten years – is, as a matter of law, not reasonable." Docket No. 109 at 13. As defendant points out, however, *Silverstein* addressed whether an inmate's thirty-year placement in solitary confinement constituted cruel and unusual punishment in violation of the Eighth Amendment. *See* 559 F. App'x at 749, 755-64. It did not establish that "prison officials are constitutionally required to incarcerate an inmate with a history such as Silverstein's in segregation conditions for the protection of other inmates." Docket No. 116 at 19. *Silverstein* is therefore insufficient to show that defendant violated Mr. Roemer's clearly established rights by failing to recommend his placement in administrative segregation. *Cf. Lowe v. Raemisch*, 864 F.3d 1205, 1209-10 (10th Cir. 2017) (holding that case was not sufficiently on point to constitute clearly established law where it addressed a different prong of the Eighth Amendment analysis).

While there are other Tenth Circuit cases involving Eighth Amendment claims arising from inmate-on-inmate assaults, those cases are materially distinguishable from this one because they involved (1) direct threats to the victim leading up to the assault, *see, e.g.*, *Durkee v. Minor*, 841 F.3d 872, 874-76 (10th Cir. 2016) (denying qualified immunity to officer who unshackled inmate in booking area within view of an inmate he

had previously threatened); *Miller v. Kastelic*, 601 F. App'x 660, 663-64 (10th Cir. 2015) (unpublished) (holding that genuine issue of fact precluded summary judgment on Eighth Amendment claim where prison official failed to act after being informed that inmate was being threatened by his cellmate and other members of a security threat group due to inmate's status as a sex offender); *Smith v. Freil*, 170 F. App'x 580, 581-83 (10th Cir. 2006) (unpublished) (reversing dismissal of Eighth Amendment claim where the plaintiff had expressed specific safety concerns associated with his testimony in a murder investigation and had been the victim of recent attacks by other inmates); (2) victims who, due to some personal characteristic or membership in a group, were particularly vulnerable to attack by other inmates, *see, e.g.*, *Miller*, 601 F. App'x at 663-64 (inmate targeted by security threat group based on status as sex offender); *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (inmate susceptible to violence who had been specifically targeted by members of the same gang in the past); *Smith*, 170 F. App'x at 581-83 (inmate concerned about safety due to his assistance in murder investigation); *Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1496-99 (10th Cir. 1990) (inmate murdered by other inmates who he had implicated in a crime); or (3) perpetrators with a more recent history of violent or disruptive behavior. *See, e.g.*, *Bloom v. Pompa*, 654 F. App'x 930, 932, 935 (10th Cir. 2016) (unpublished) (denying qualified immunity to an officer who, for purposes of disciplining a pretrial detainee, placed him with another inmate who was known by jail personnel to be violent and who, months before, had required two officers to transport him to segregation for failure to comply with the officer's commands to stop kicking and beating the door of his pod);

*Mervin v. Furlong*, 208 F.3d 226, 2000 WL 248472, at *1-2 (10th Cir. 2000) (unpublished table decision) (affirming denial of qualified immunity to prison officials who moved an inmate into the same cell as the plaintiff while investigating whether the inmate had brutally raped another inmate at the facility).[11]  Notably, none of these cases address the situation in which an inmate with a violent past, but who has not committed a disciplinary infraction in over ten years, is placed in general population with a cellmate with whom the inmate has no history of being incompatible.

The weight of authority from other circuits does not support the denial of qualified immunity.  In *Shauf*, the district court held that case law from other circuits was sufficient to show that a prison official violated the plaintiff's clearly established rights by withholding information regarding a recent instance of violence by another inmate and allowing that inmate to be transferred to medium security, where he assaulted the plaintiff.  313 F. Supp. 3d  at 1271, 1273-75.  *Shauf* and the cases it cites are materially distinguishable from this case because none involve the double celling of an inmate with no documented instances of violence for over a decade.  *See id.* at 1265, 1271 (inmate transferred to medium security less than two years after he stabbed another inmate); *see also Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1316-17, 1321 (11th Cir. 2016) (inmate placed in cell with another inmate despite the fact that officials knew he had severe mental health issues, had assaulted his previous cellmate

---

[11]The Court notes that many of these cases were decided after 2011 – the year Mr. Shoaga decided not to recommend Mr. Farley's placement in administrative segregation.  While cases post-dating the alleged constitutional violation are generally insufficient to demonstrate that a plaintiff's rights were clearly established, *see Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018), the cases nonetheless provide useful insight into the state of Tenth Circuit law at the time of the events giving rise to this lawsuit.

less than a month before, and was required, under prison policy, to be housed alone)*;*
*Solis v. Cty. of Los Angeles*, 514 F.3d 946, 949, 957 (9th Cir. 2008) (ex-member of
gang placed in "gang module" despite requests for protective custody); *Pierson v.
Hartley*, 391 F.3d 898, 901 (7th Cir. 2004) (inmate transferred to unrestricted dormitory
unit after six months in a different facility where he had engaged in violent conduct);
*Greene v. Bowles*, 361 F.3d 290, 292, 294-95 (6th Cir. 2004) (transgender inmate who
was particularly vulnerable to assault housed with inmate known to have "a long
institutional history" of being violent and disruptive); *Calderon-Ortiz v. LaBoy-Alvarado*,
300 F.3d 60, 63, 65-66 (1st Cir. 2002) (Eighth Amendment claim based on prison
officials' general failure to separate inmates according to their security risks and safety
needs); *Billman v. Indiana Dep't of Corrs.*, 56 F.3d 785, 788 (7th Cir. 1995) (inmate
housed with cellmate who had known "propensity to rape other inmates"); *Redman v.
County of San Diego*, 942 F.2d 1435, 1438 & n.2 (9th Cir. 1991) (inmate raped by
cellmate who, according to a report created that same month, had "been coercing and
manipulating other inmates . . . for sexual favors" (internal quotation marks omitted)),
*abrogated by Farmer*, 511 U.S. 825.[12]

   Moreover, several out-of-circuit decisions support defendant's entitlement to
qualified immunity in this case.  Defendant relies on two such decisions – *Curry v. Crist*,
226 F.3d 974 (8th Cir. 2000), and *Isby v. Smith*, No. 04-cv-00157-BAE, Docket No. 60
(S.D. Ga. Oct. 30, 2016) – which affirmed qualified immunity for prison officials alleged

---

   [12]Neither *Greene* nor *Billman* specifies when the inmate who perpetrated the
violence had last engaged in violent conduct.  *See generally Greene*, 361 F.3d at 294-
95; *Billman*, 56 F.3d at 788.

to have violated inmates' Eighth Amendment rights by failing to protect them from murder at the hands of other prisoners.  In *Curry*, the Eighth Circuit held that the prison officials did not act with deliberate indifference by releasing an inmate who had threatened "mass murder" at the facility to general population after he recanted his threat and made no further threats during the sixteen months leading to the murder. 226 F.3d at 976, 978.  The court expressly rejected the argument that the inmate's three prior murders, along with his violent behavior "during his early years in prison," required his placement in maximum custody, reasoning that "prison officials are not required to segregate indefinitely all inmates whose original crimes suggest they might be capable of further violence."  *Id.* at 978.  Likewise, in *Isby*, the district court rejected a claim that prison officials had disregarded a substantial risk of harm by failing to place an inmate in protective isolation.  *Isby*, No. 04-cv-00157-BAE, Docket No. 60 at 1-2.  In doing so, the court declined to hold that prison officials' knowledge of the inmate's three prior murders – one of which occurred in prison and necessitated his transfer to his current facility – was sufficient to allow a jury to infer their subjective awareness of a substantial risk of harm.  *Id.* at 4.

In summary, it was not clearly established at the time of Mr. Shoaga's decision that his failure to recommend Mr. Farley for administrative segregation would constitute a violation of other inmates' Eighth Amendment rights.

While the Court has thus far focused on plaintiff's claim that Mr. Shoaga violated Mr. Roemer's rights by deciding not to recommend Mr. Farley's placement in administrative segregation, plaintiff also contends that Mr. Shoaga acted with deliberate indifference by failing to take other measures – such as recommending transitional

23

programming – to abate the risk posed by Mr. Farley.  *See* Docket No. 118 at 16-18.

This claim fails as well.  Plaintiff does not dispute that the "decision regarding an

offender's final placement, including their facility and programming needs, is made by

Offender Services," Docket No. 110 at 8, ¶ 40, or that Mr. Shoaga expected that Mr.

Farley would be provided appropriate treatment.  *Id.*, ¶ 41.  Although plaintiff disputes

the reasonableness of this expectation, *see* Docket No. 118 at 8, ¶ 41, a finding of

unreasonableness does not establish that Mr. Shoaga was deliberately indifferent to a

substantial risk of harm.  *See Verdecia v. Adams*, 327 F.3d 1171, 1177 (10th Cir. 2003)

(explaining that "a finding of unreasonableness is merely a finding of negligence and

not deliberate indifference").[13]

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that Mr. Shoaga is entitled to qualified

immunity with respect to plaintiff's Eighth Amendment claim.  It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 110] is

**GRANTED**.  It is further

**ORDERED** that plaintiff's Eighth Amendment claim against defendant Ali

---

[13]To the extent plaintiff suggests that Mr. Shoaga's recommendation of general population deprived Mr. Farley, as a practical matter, of the opportunity to participate in necessary step-down programming, *see* Docket No. 118 at 8, ¶ 43 (asserting that, "[h]ad Mr. Shoaga administratively segregated Mr. Farley, . . . he would have had to complete [the] Thinking for a Change [program] before returning to general population") – in other words, that Mr. Shoaga acted with deliberate indifference by failing to consider programming availability in deciding whether to recommend Mr. Farley for administrative segregation – plaintiff has offered no evidence that Mr. Shoaga understood administrative segregation to be the only avenue by which Mr. Farley could have accessed such programming.  Nor has plaintiff shown that programming availability was a relevant criterion for placing an inmate in administrative segregation.

Shoaga is dismissed.  It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Docket No.

109] is **DENIED** as moot.


DATED September 24, 2019.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge