IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 14-cv-01655-PAB-NYW

THE ESTATE OF JAMES ROEMER,

      Plaintiff,

v.

DAVID JOHNSON, in his individual capacity,
NATHAN ALGIEN, in his individual capacity, and
CHASE FELZEIN, in his individual capacity,

      Defendants.

---

## ORDER

---

This matter is before the Court on Defendants Johnson, Algien, Felzein, and

Boyer's Motion for Summary Judgment [Docket No. 145].[1]  The Court has subject

matter jurisdiction under 28 U.S.C. § 1331.

## I.  BACKGROUND[2]

### A.  Mr. Farley's Transfer to Colorado

In July 2011, inmate Paul Farley was transferred from the Arizona Department of

Corrections ("ADC") to the Colorado Department of Corrections ("CDOC").  Docket No.

---

[1]On March 7, 2019, the Tenth Circuit affirmed the Court's dismissal of plaintiff's claims against Thomas Boyer.  *See* Docket No. 186 at 23.  Accordingly, this order only addresses plaintiff's claims against defendants Johnson, Algien, and Felzein.

[2]The facts stated below are undisputed unless otherwise indicated.  Some of the facts are taken from Ali Shoaga's Statement of Undisputed Material Facts, Docket No. 110 at 1-10, which defendants have incorporated into their summary judgment motion, *see* Docket No. 145 at 2, without objection from plaintiff.

110 at 1, ¶ 1. At the time of his transfer, the ADC provided the CDOC with records concerning Mr. Farley's incarceration in Arizona. *Id.* at 2, ¶¶ 5-6. Those records detailed multiple acts of violence committed by Mr. Farley while in ADC custody, including a 1999 disciplinary conviction for sexually assaulting a cellmate, a 2000 disciplinary conviction for slicing open a cellmate's back with a razorblade, and a manslaughter conviction for helping an inmate in an adjoining cell commit suicide in July 2001. *Id.* at 2-3, ¶ 6. Mr. Farley's records also indicated that Mr. Farley had made threatening statements in regard to other inmates such as "I just want to do somebody," "I want to put steel in someone," and "it would be easier to find a victim in PS." *Id.* at 4, ¶ 13.

On September 1, 2011, CDOC officials held a hearing at the Denver Reception and Diagnostic Center ("DRDC") to determine whether Mr. Farley should be placed in administrative segregation. *Id.* at 1, ¶ 2.[3] Defendant Ali Shoaga presided over the hearing as the chairperson of a three-member hearing board. *Id.*, ¶ 3. As part of the hearing process, Mr. Shoaga reviewed records regarding Mr. Farley's ADC disciplinary history. *Id.* at 2, ¶ 5. Relying principally on the fact that it had been over ten years since Mr. Farley's last disciplinary infraction, Mr. Shoaga recommended that Mr. Farley not be placed in administrative segregation in the CDOC. *Id.* at 6, ¶ 24.

**B. Facts Related to Defendant Johnson**

At the time of the events giving rise to this lawsuit, defendant David Johnson was the associate warden of DRDC. Docket No. 148 at 1-2, ¶ 2; Docket No. 149 at 1, ¶¶ 2-

---

[3]The DRDC "is the intake facility for all incoming CDOC inmates." Docket No. 145 at 5, ¶ 26.

3.  In that role, he was responsible for reviewing administrative segregation hearings and affirming, modifying, or reversing the classification recommendation submitted by the chairperson.  Docket No. 145 at 3, ¶¶ 3-5.  After reviewing the records related to Mr. Farley's hearing, including any documents considered by the hearing board, Mr. Johnson affirmed Mr. Shoaga's recommendation that Mr. Farley not be placed in administrative segregation.  *Id.*, ¶¶ 4, 7-8.  Mr. Johnson relied on the same factors considered by the hearing board, including the fact that Mr. Farley had no documented disciplinary infractions in the ADC in the past ten years.  *Id.,* ¶¶ 9-10.

### C.  Facts Related to Defendant Algien

In 2011, defendant Nathan Algien was a classification officer in the CDOC's Office of Offender Services, which makes the final decision regarding an offender's facility placement within the CDOC.  *Id.* at 5, ¶¶ 22-24.  Before that determination is made, a diagnostic programmer at the DRDC gives the offender an Initial Custody Rating based on an objective scoring system designed to assess the offender's level of risk and security needs.  *Id.* at 5-6, ¶¶ 27-28, 31.  In 2011, custody levels in general population in the CDOC ranged from "minimum" custody, the least restrictive classification, to "close" custody, the most restrictive.  *Id.* at 6, ¶ 29.  Although Mr. Algien had the authority to recommend an override of an offender's initial custody classification, *id.*, ¶ 32, he did not have the power to override an offender's administrative segregation classification.  *Id.* at 7, ¶ 33.

Mr. Algien's job as a classification officer was to determine an appropriate facility at which to place an offender based on the offender's custody level and any "custody

issues" related to that offender. *Id.*, ¶¶ 35-36.[4]   Based on Mr. Farley's initial classification as a "close" custody offender, there were three facilities within the CDOC system at which he could be placed: Sterling Correctional Facility ("SCF"), Limon Correctional Facility, and Centennial Correctional Facility. *Id.* at 9, ¶ 48.  Mr. Farley was likely assigned to SCF because it was the first close custody facility with available bed space that could house him due to custody issues. *Id.*, ¶ 49.

Once Mr. Farley was transferred to SCF, Mr. Algien did not have any authority over Mr. Farley's specific cell or housing unit assignments. *Id.*, ¶ 50.  All internal housing decisions were made by the specific facility at which an offender was placed. *Id.*, ¶¶ 51-52.

### D.  Facts Related to Defendant Felzein

In May and June 2012, defendant Chase Felzein was employed as a housing lieutenant at SCF. *Id.* at 10, ¶ 58.  His responsibilities included supervising offenders and housing unit staff members and reviewing and approving offender cell assignments. *Id.* at 10, 12, ¶¶ 59-60, 76.

Once an offender was assigned to a facility, an Internal Classification Committee, of which Mr. Felzein was not a member, would determine the particular living unit in which the offender would be housed. *Id.* at 11-12, ¶¶ 71-72.  In May and June 2012, Mr. Farley and James Roemer were both assigned to Living Unit 2 in the medium security area of SCF. *Id.* at 10, ¶¶ 60-61.  They were also two of a group of four offenders who had requested a cell change. *Id.* at 16, ¶ 100.

---

[4]A "custody issue is an 'enemy' or other offender with whom the offender cannot be housed due to safety concerns."  Docket No. 145 at 7, ¶ 37.

In approving a recommendation that Mr. Farley and Mr. Roemer be placed in the same cell, Mr. Felzein relied on the factors set forth in an internal prison document known as the Points of Compatibility directive, which housing unit staff were expected to follow in making cell placement decisions. *Id.* at 12-13, 17, ¶¶ 78, 110. Among the compatibility factors considered by Mr. Felzein were Mr. Farley's and Mr. Roemer's ages, their races, their physical sizes, their security threat group ("STG")/gang affiliations, the length of their sentences, and their Sexually Aggressive Behavior ("SAB")/Sexual Vulnerability Risk ("SVR") scores. *Id.* at 13, 16-17, ¶¶ 80, 104-08. Mr. Felzein determined that all points of compatibility were met because Mr. Farley and Mr. Roemer were only five years apart in age, they were both Caucasian, they were similarly sized, they were not members of rival STGs, they had compatible SAB/SVR scores, there was only a five-year difference in their mandatory release dates, they had no known custody issues with each other, and they had agreed to live together in the same cell. *Id.* at 16-17, ¶¶ 104-09.[5] In making a determination as to these factors, Mr. Felzein would have reviewed the offender information available in the CDOC's DCIS/PCDCIS computer system. *Id.* at 14-15, ¶¶ 93, 98.[6] However, the DCIS/PCDCIS system did not contain all of the information that the CDOC would have possessed regarding Mr. Farley and Mr. Roemer. *See id.*, ¶¶ 94-96.

---

[5]As addressed in more detail in the Court's analysis, plaintiff disputes the third, fifth, sixth, and seventh factors. *See* Docket No. 148 at 5-6, ¶¶ 105-06, 108-09.

[6]For example, Mr. Felzein would have looked to the DCIS/PCDCIS system for Mr. Farley and Mr. Roemer's SAB/SVR scores, which would have been assessed initially by programming staff at DRDC and then re-assessed by an SCF staff person specifically designated for that responsibility. *See id.* at 14-15, ¶¶ 91-93, 97.

At some point, Mr. Farley and Mr. Roemer were moved into the same cell. *Id.* at 10, ¶ 63. On June 13, 2012, Mr. Farley murdered Mr. Roemer. *Id.*

Plaintiff, Mr. Roemer's estate, filed this case on June 12, 2014. Docket No. 1. Plaintiff asserts an Eighth Amendment deliberate indifference claim under 42 U.S.C. § 1983 based on defendants' respective roles in the decision-making process that led to Mr. Farley's placement in the same cell as Mr. Roemer at SCF. *See* Docket No. 141 at 20-23, ¶¶ 94-106. On October 12, 2017, the Court granted summary judgment in favor of defendants on statute-of-limitations grounds. Docket No. 175. Plaintiff appealed, Docket No. 179, and on March 7, 2019, the Tenth Circuit reversed the grant of summary judgment, holding that the Court had erred by failing to determine when plaintiff's "claims against *each* defendant accrued." Docket No. 186 at 23. The Tenth Circuit also concluded that, with the exception of Thomas Boyer, defendants had failed to establish that plaintiff's claims accrued outside of the relevant limitations period. *Id.*

Following the Tenth Circuit's remand, *see id.*, the Court directed the parties to file status reports identifying the issues that remained to be resolved in light of the Tenth Circuit's decision. Docket No. 188. Based on those status reports and the Tenth Circuit's ruling, the Court determined that the next step in this case is for the Court to determine whether defendants are entitled to summary judgment on any ground other than the statute of limitations. Docket No. 191 at 1. On April 24, 2019, the Court reinstated defendants' summary judgment motion. Docket No. 191.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an

inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

### A.  Qualified Immunity

Defendants raise the defense of qualified immunity.  *See* Docket No. 145 at 19. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). When a defendant asserts a qualified immunity defense, the plaintiff has a "heavy two-part burden" of establishing "(1) that the defendant's action violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions."  *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (internal quotation marks omitted).  Failure to satisfy either prong of this test will result in a grant of qualified immunity to the defendant.  *Id.*  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When evaluating a claim of qualified immunity, "'clearly established law' should not be defined 'at a high level of generality.'"  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))).  "The relevant,

dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014). Ordinarily, a right is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted). This does not require a case "directly on point." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted). On the other hand, precedent that merely states "a general proposition of applicable law" will not make a right "clearly established" for purposes of qualified immunity. *Grissom*, 902 F.3d at 1168. A right is clearly established only if existing precedent places "the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)).

### B. Eighth Amendment

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("The [Eighth] Amendment . . . requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199 (1989))). "The analysis [of an Eighth Amendment claim] should not be based on 'a court's idea of how best to operate a detention facility,'" but should reflect "the evolving standards of decency that mark the progress of a maturing

society," which the Tenth Circuit has characterized as a "lofty standard." *DeSpain v. Uphoff*, 264 F.3d 965, 973-74 (10th Cir. 2001) (citing *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981)). To prevail on its claim under the Eighth Amendment, plaintiff must show that (1) objectively, the harm complained of is sufficiently "serious" to merit constitutional protection, and (2) defendants were subjectively aware of a substantial risk to Mr. Roemer's health or safety and acted in purposeful disregard of that risk. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

Regarding the objective element, plaintiff must establish that Mr. Roemer was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 835, which requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *compare Benshoof v. Layton*, 351 F. App'x 274, 277 (10th Cir. 2009) (unpublished) (finding objective element satisfied where plaintiff was forced to remain in cell with stinging fire ants for six days), *with Montez v. Lampert*, 595 F. App'x 789, 792 (10th Cir. 2014) (unpublished) ("[A] 15-year-old hernia operation would neither present symptoms readily ascertainable to a lay person, nor make it obvious to a lay person that a bottom-bunk assignment was necessary. Montez thus fails the objective prong of the *Farmer* test.").

As to the subjective element, the Eighth Amendment does not reach a prison official's conduct unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Verdecia v. Adams*, 327

F.3d 1171, 1175-76 (10th Cir. 2003) ("Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." (internal citations omitted)).  A prisoner must therefore establish "that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Martinez*, 563 F.3d at 1089 (quotations omitted).  An action or inaction unaccompanied by a subjective awareness of an unreasonable risk of harm does not constitute "punishment" within the meaning of the Eighth Amendment.  *Farmer*, 511 U.S. at 837-38.  A court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."  *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also Farmer*, 511 U.S. at 842 (noting that state of mind can be established with circumstantial evidence and "from the very fact that the risk was obvious").  The negligent conduct of a prison official is, in all cases, insufficient to rise to the level of deliberate indifference.  *Farmer*, 511 U.S. at 835 ("Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety" (quotations omitted)).

### C.  Defendant Johnson

Plaintiff asserts that Mr. Johnson acted with deliberate indifference in violation of the Eighth Amendment by (1) approving Mr. Shoaga's recommendation that Mr. Farley not be placed in administrative segregation, *see* Docket No. 141 at 10-11, ¶¶ 48-53; and (2) failing to recommend that Mr. Farley be placed in a treatment program that

would address his "violent tendencies." *Id.* at 11, ¶ 52. Defendants assert that Mr.

Johnson is entitled to qualified immunity because "there is no evidence that [he]

deliberately disregarded a substantial risk of harm with respect to the placement of

Farley in general population," Docket No. 145 at 21, and "there is no binding precedent

requiring corrections officers to segregate inmates who have violent histories that are a

decade old indefinitely." *Id.* at 20.

The Court agrees with defendants' latter argument and finds, at least with

respect to Mr. Johnson's approval of Mr. Shoaga's recommendation on administrative

segregation, that the Court's previous analysis of Mr. Shoaga's entitlement to qualified

immunity, *see* Docket No. 192, controls the inquiry as to Mr. Johnson. It is undisputed

that one of Mr. Johnson's duties as associate warden was to review administrative

segregation classification hearings and affirm, modify, or reverse the recommendation

submitted by the chairperson. Docket No. 145 at 3, ¶¶ 3-5; Docket No. 148 at 2, ¶ 3;

Docket No. 149 at 1, ¶¶ 2-3. Consistent with this duty, Mr. Johnson reviewed Mr.

Farley's September 1, 2011 administrative segregation hearing and affirmed Mr.

Shoaga's recommendation that Mr. Farley not be placed in administrative segregation.

Docket No. 145 at 3, ¶¶ 7-8. In affirming Mr. Shoaga's recommendation, Mr. Johnson

relied on the same factors considered by the hearing board, including the fact that Mr.

Farley had not had any documented disciplinary infractions in the previous ten years.

*Id.*, ¶¶ 9-10. Accordingly, for the same reasons stated in the Court's previous order,

Docket No. 192, the Court finds it was not clearly established at the time of Mr.

Johnson's decision that his failure to reverse or modify Mr. Shoaga's placement

recommendation would constitute a violation of other inmates' Eighth Amendment

rights.

To the extent plaintiff asserts an Eighth Amendment claim based on Mr. Johnson's failure to recommend Mr. Farley's placement in a treatment program, *see* Docket No. 141 at 11, ¶ 52, that claim also fails. Mr. Johnson explained in an affidavit that he was "not involved in making program recommendations for CDOC offenders" and that such recommendations "were normally made by the offender's case manager at the facility to which they were assigned." Docket No. 145-1 at 3, ¶¶ 20-21. Plaintiff has offered no evidence to dispute this assertion. *See* Docket No. 148 at 4, ¶ 20; *see also Sclafani v. Liberty Mutual Ins. Co.*, No. 17-cv-01121-RM-KLM, 2019 WL 1437622, at *3 (D. Colo. Feb. 4, 2019) ("Statements or arguments of counsel are not evidence sufficient to defeat summary judgment." (citing *In re EuroGas, Inc.*, 755 F. App'x 825, 833 (10th Cir. 2019) (unpublished)). Accordingly, plaintiff has not demonstrated a genuine dispute of fact as to whether Mr. Johnson acted with deliberate indifference by failing to recommend Mr. Farley for treatment.

For the foregoing reasons, Mr. Johnson is entitled to qualified immunity.

### D. Defendant Algien

Plaintiff asserts an Eighth Amendment claim against Mr. Algien based on his failure to refer Mr. Farley to a treatment program or direct that he be housed in a single cell. *See* Docket No. 141 at 11-13, ¶¶ 54-59; *see also* Docket No. 148 at 13. Defendants contend that Mr. Algien is entitled to qualified immunity because he relied on the same information as Mr. Shoaga in determining an appropriate facility for Mr. Farley, Docket No. 145 at 23-24, and was not personally involved in cell assignment or

programming decisions, which were made at the facility level. *Id.* at 22-23.

The Court agrees that plaintiff's claim against Mr. Algien fails for lack of personal participation. At the time of Mr. Algien's actions, he was a classification officer in the CDOC's Office of Offender Services. Docket No. 145 at 5-6, ¶¶ 24, 32. As a classification officer there, Mr. Algien's role was to "determine the appropriate facility in which to place a CDOC offender" based on the offender's Initial Custody Rating or subsequent reclassifications. Docket No. 145 at 5-7, ¶¶ 24, 32, 35. Although he "had the authority to recommend an override" of an offender's initial custody classification, *id.* at 6, ¶ 32, he was not able to override the Warden's decision regarding an offender's administrative segregation classification. *Id.* at 7, ¶ 33. He also did not have any authority over facility-level decisions regarding an offender's housing or cell assignment, including the decision whether to place an offender in a single or shared cell. *Id.* at 9, ¶¶ 50-52. These undisputed facts foreclose plaintiff's argument that Mr. Algien acted with deliberate indifference by failing to direct Mr. Farley's placement in a single cell. Additionally, to the extent Mr. Algien had any ability to recommend modification of an offender's administrative segregation classification, *see* Docket No. 145 at 6-7, ¶ 32,[7] the Court has already determined it was not clearly established in 2011-2012 that

---

[7]It is not clear from the briefing or Mr. Algien's affidavit whether his ability to recommend an "override to the initial classification of an offender," Docket No. 145-3 at 3, ¶ 11, extended to an offender's administrative segregation classification. Because the Court must view the evidence in a light most favorable to plaintiff, the Court assumes that Mr. Algien's authority did extend to recommending a modification or override of an offender's administrative segregation classification. This interpretation is not necessarily inconsistent with Mr. Algien's later statement that he "did not have the authority to override the Warden's decision regarding an offender's administrative segregation classification." *Id.*, ¶ 12. The ability to *recommend* an override is distinct from the ability to override an offender's administrative segregation classification.

defendants' failure to recommend or direct Mr. Farley's placement in administrative segregation based on his violent history in ADC violated other inmates' Eighth Amendment rights. *See* Docket No. 192.

Regarding plaintiff's assertion that Mr. Algien acted with deliberate indifference by failing to recommend Mr. Farley's placement in a treatment program, defendants have submitted an affidavit from Mr. Algien stating that he "had no authority to recommend or place an offender in any programs, including Thinking for a Change of the Intensive Management Program at Sterling Correctional Facility," and that the "decision to place an offender in a particular program was made internally at the facility in which the offender was assigned." Docket No. 145-3 at 5, ¶¶ 32-34; *see also* Docket No. 145 at 9, ¶¶ 53-55. Plaintiff disputes these assertions, citing evidence that Mr. Algien would have considered the availability of "a specific program [or] treatment" in determining Mr. Farley's facility placement. Docket No. 148 at 5, ¶¶ 53-55; *see also id.* at 12-13. Because this evidence does not controvert Mr. Algien's statement that he had no authority to recommend or place an offender in any treatment programs, *see* Docket No. 148-5 at 5, 27:6-21 (explaining that classification officers would consider programming availability as one factor in determining whether to recommend an inmate's transfer to a different facility), the Court interprets plaintiff's argument as suggesting that Mr. Algien acted with deliberate indifference by failing to consider the availability of treatment programs at Sterling before assigning Mr. Farley to that facility.[8]

_____

[8]Although not directly addressed in the parties' fact sections, the Court infers that Mr. Farley did not participate in any programs at Sterling aimed at moderating his violent behavior. *See* Docket No. 148 at 13 (arguing that Mr. Algien should have referred Mr. Farley to a treatment program at SCF).

However, it is undisputed there were only three facilities within the CDOC capable of accommodating Mr. Farley based on his close custody classification: Sterling Correctional Facility, Limon Correctional Facility, and Centennial Correctional Facility. Docket No. 145 at 9, ¶ 48.[9] Plaintiff has not presented any evidence that either Limon or Centennial offered programming unavailable at Sterling.[10] Thus, plaintiff cannot show a causal connection between Mr. Algien's alleged failure to consider the availability of treatment programs and the deprivation of Mr. Roemer's constitutional rights. *See Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (explaining that a plaintiff asserting an Eighth Amendment claim must show a "causal connection" between the defendant's conduct and the alleged constitutional deprivation).

### E.  Defendant Felzein

During the events at issue in this lawsuit, Mr. Felzein was responsible for reviewing and approving offender cell assignments within Mr. Farley's housing unit. Docket No. 145 at 10, 17, ¶¶ 58-62, 110.  Plaintiff alleges that Mr. Felzein acted with deliberate indifference by approving Mr. Farley's placement in a cell with Mr. Roemer in violation of prison housing policy.  *See* Docket No. 141 at 17, ¶¶ 76-79.

---

[9]Aside from arguing that Mr. Farley should have been placed in administrative segregation, plaintiff does not contend that Mr. Farley was improperly classified as a close custody offender.  Such an argument would make little sense, as close custody is the most restrictive custody level in general population.  *See* Docket No. 145 at 6, ¶ 29.

[10]To the contrary, plaintiff asserts "[t]here were programs at Sterling that Mr. Farley could have been assigned to that would have mitigated the risk that Mr. Farley posed to the general population."  Docket No. 148 at 13.  To the extent plaintiff contends that Mr. Algien should have recommended Mr. Farley's placement in one of these programs, the Court has already determined that the evidence cited does not support plaintiff's position.

In approving the placement, Mr. Felzein considered various criteria set forth in associate warden John Chapdelaine's Points of Compatibility directive, including Mr. Farley and Mr. Roemer's ages, races, physical sizes, sentence lengths, Sexual Vulnerability Risk ratings, and security threat group/gang affiliations. *See* Docket No. 145 at 12-17, ¶¶ 78-85, 87-89, 105-10. Plaintiff asserts that application of these factors does not demonstrate it was appropriate to house Mr. Farley and Mr. Roemer in the same cell. *See* Docket No. 148 at 14. Specifically, plaintiff points to the disparity in Mr. Farley and Mr. Roemer's physical sizes, the difference between their sentences, Mr. Farley's documented history of sexual assault, and the existence of custody issues between Mr. Farley and Mr. Roemer, which were made manifest by Mr. Roemer's murder. *See* Docket No. 148 at 5-6, ¶¶ 105-06, 108-09.[11]

The Court finds plaintiff's evidence insufficient to establish a genuine issue of fact as to whether Mr. Felzein was subjectively aware of a substantial risk of harm to Mr. Roemer. Regarding Mr. Farley's history of sexual assault and any custody issues existing between Mr. Farley and Mr. Roemer, plaintiff has not shown that Mr. Felzein knew of either circumstance when he approved the decision to house Mr. Farley and Mr. Roemer in the same cell.[12] Mr. Felzein states in his affidavit that he was not aware,

---

[11]Plaintiff cites Mr. Farley's history of sexual assault in the ADC to dispute the appropriateness of housing Mr. Farley and Mr. Roemer in the same cell. *See* Docket No. 148 at 5-6, ¶ 105. However, plaintiff admits that Mr. Farley's and Mr. Roemer's SAB/SVR scores did not render them incompatible under the Points of Compatibility directive. *Id.*

[12]Plaintiff does not cite any evidence showing there were known custody issues between Mr. Farley and Mr. Roemer at the time Mr. Felzein approved the decision to house them in the same cell. *See* Docket No. 148 at 6, ¶ 109. Plaintiff merely asserts that the existence of custody issues was clear, given that Mr. Farley ultimately killed Mr.

in 2012, of Mr. Farley's violent history in the ADC or of the packet of information regarding that history, which the ADC provided to the CDOC upon Mr. Farley's transfer to Colorado. *See* Docket No. 145-5 at 8, ¶¶ 55-58. In applying the Points of Compatibility guidelines and approving an offender's cell placement, Mr. Felzein would have reviewed the offender information contained in the CDOC's DCIS/PCDCIS computer system. *See* Docket No. 145 at 14, 16, ¶¶ 91, 93, 103. However, it is undisputed that the information available to Mr. Felzein through that system did not reflect all of the information possessed by the CDOC regarding a particular offender. *See id.* at 14-15, ¶¶ 94-96. While plaintiff contends that Mr. Felzein would have been aware of the ADC records because "Mr. Farley's CDOC file is littered with references to his violent history in the [ADC]," Docket No. 148 at 7, ¶ 113; *see also id.* at 14, plaintiff has not provided any evidence of Mr. Farley's CDOC file or the particular records Mr. Felzein would have reviewed in approving Mr. Farley's cell assignment. Accordingly, plaintiff has failed to demonstrate a genuine issue of fact as to whether Mr. Felzein was aware of Mr. Farley's history in the ADC. *See Vega v. Davis*, 572 F. App'x 611, 618 (10th Cir. 2014) (unpublished) (stating that "[t]he mere presence of records, by themselves, does not create the reasonable inference that [a defendant] read them").

As to the remaining compatibility issues cited by plaintiff – namely, the fact that Mr. Farley weighed more than Mr. Roemer and had more time left on his sentence –

_____

Roemer. *See id.* However, whether a prison official acted with deliberate indifference "must be based on what he knew [at the time of the alleged constitutional violation], not what is known now." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 776 (10th Cir. 2013); *see also Millward v. Bd. of Cty. Comm'rs of the Cty. of Teton, Wyo.*, 2018 WL 9371573, at *24 (D. Wyo. Oct. 19, 2018) ("[F]ailure in hindsight to pursue the ideal path falls far short of deliberate indifference.").

plaintiff has not demonstrated a genuine issue of fact as to whether Mr. Felzein violated prison housing policy by approving Mr. Farley's cell placement. Even assuming the forty-pound weight difference between Mr. Farley and Mr. Roemer was not "negligible," and Mr. Farley had at least twelve years to serve on his sentence at the time he was placed with Mr. Roemer, *see* Docket No. 148 at 6, ¶¶ 106, 108, the Points of Compatibility directive did not provide clear guidance as to how prison officials should evaluate this criteria. The directive merely advised that "[a] victim prone 120 lb. inmate should not be housed with an intimidating 250 lb. inmate," and that an inmate "doing a short sentence" should not be housed "with an inmate doing a long sentence." Docket No. 148-7. Based on these benchmarks, Mr. Farley and Mr. Roemer were not obviously incompatible. *Id.*[13]

However, even if Mr. Farley and Mr. Roemer's cell assignment violated the Points of Compatibility directive with respect to the physical-size and sentence-length factors, plaintiff has not cited any evidence or authority establishing that this would have been sufficient, standing alone, to make Mr. Felzein aware that "a substantial risk of serious harm exist[ed]." *Farmer*, 511 U.S. at 837; *see also Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."). At a minimum, plaintiff has failed to demonstrate that Mr. Roemer had a clearly established constitutional right not to be

---

[13]While plaintiff's expert, Daniel Vasquez, opines that the decision to place Mr. Farley in a cell with Mr. Roemer was unreasonable and a violation of prison policy, *see* Docket No. 148-2 at 8-10, he does not profess any knowledge as to how the Points of Compatibility were interpreted at SCF and relies in large part on Mr. Farley's history of violence, of which – according to defendant's uncontroverted evidence – Mr. Felzein was not aware.

placed in the same cell as an inmate weighing forty pounds more than him and having a longer sentence.  *See Lowe v. Raemisch*, 864 F.3d 1205, 1212 (10th Cir. 2017) (stating that the standard for qualified immunity is "whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted" (internal quotation marks omitted)).  As a result, plaintiff cannot overcome Mr. Felzein's defense of qualified immunity.[14]

## IV.  CONCLUSION[15]

For the foregoing reasons, it is

**ORDERED** that Defendants Johnson, Algien, Felzein, and Boyer's Motion for Summary Judgment [Docket No. 145] is **GRANTED**.  It is further

**ORDERED** that Defendants' Motion to Exclude Expert Testimony By Plaintiff's Expert Jeffrey Opp Pursuant to Fed. R. Civ. P. 702 [Docket No. 151] is **DENIED** as moot.  It is further

**ORDERED** that, within fourteen days of this order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

---

[14]To the extent plaintiff asserts that Mr. Felzein acted with deliberate indifference by failing to recommend Mr. Farley's placement in a transitional program, such as Think for a Change, *see* Docket No. 148 at 7, ¶ 115, plaintiff has not presented any evidence to rebut Mr. Felzein's statement that he "was not involved in making program recommendations for CDOC offenders."  Docket No. 145-5 at 9, ¶ 62.

[15]Because the Court did not rely on any opinions by plaintiff's expert, Jeffrey Opp, in resolving defendants' motion for summary judgment, Defendants' Motion to Exclude Expert Testimony By Plaintiff's Expert Jeffrey Opp Pursuant to Fed. R. Civ. P. 702 [Docket No. 151] will be denied as moot.

DATED September 24, 2019.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge